**UNITED STATES of America ex rel. Monty POWELL, Plaintiff-Appellee,**

v.

**James IRVING, et al., Defendants-Appellants.**

**No. 81–2653.**

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1982.

Decided July 19, 1982.

Rehearing Denied Aug. 17, 1982.

Michael V. Accettura, Asst. Atty. Gen., Springfield, Ill., for defendants-appellants.

James E. Tancula, Senior Law Student, Mandel Legal Aid Clinic, for plaintiff-appellee.

Before PELL, BAUER and ESCHBACH, Circuit Judges.

BAUER, Circuit Judge.

This case of first impression in this Circuit raises the important question whether state parole board officials reviewing parole applications enjoy absolute immunity from 42 U.S.C. § 1983 damage actions. The district court ruled that they do not. Defendants-appellants, past and present members of the Illinois Prisoner Review Board (Board), sought permission to perfect an

---

interlocutory appeal to this Court pursuant to 28 U.S.C. § 1292(b)(5), which we granted. We hold that appellants are absolutely immune from section 1983 suits for their official activities in processing parole applications. We therefore reverse the district court's decision concerning Powell's damages claim, but remand for further consideration of Powell's declaratory relief request.

I

On February 26, 1970, the Circuit Court of Cook County, Illinois, convicted plaintiff-appellee Monty Powell of murdering a police officer and sentenced Powell to die. Powell's death sentence was subsequently reduced to a term of 25 to 50 years, prompting Powell to seek parole. The Board denied Powell's parole requests on four occasions between 1977 and 1980, basing each denial on the seriousness of Powell's offense and the Board's belief that his parole would promote disrespect for the law.

On April 10, 1981, Powell filed a section 1983 complaint against the Board, charging that the Board's adverse decisions violated his civil rights. Specifically, Powell alleged that his race and the nature of his crime were the true reasons for denying him parole. Powell further alleged that the Board systematically discriminated against black inmates in considering parole applications.

On April 22, 1981, the Board filed an answer denying Powell's allegations and raising good faith as a defense. Shortly thereafter the Board moved to dismiss Powell's complaint, claiming absolute immunity from section 1983 damage suits. After denying the motion to dismiss, the district court allowed the Board to file an interlocutory appeal petition with this Court. We granted permission to appeal because of the significance of the question presented.

II

Official immunity insulates executive, legislative, and judicial officers from liability arising out of their performance of official duties. The most sweeping form of this defense is absolute immunity, which totally exempts official wrongdoers from personal damage actions for their alleged official misconduct. Because absolute immunity serves as a complete bar to suit, courts are reluctant to confer it absent compelling reasons.

Although the Supreme Court has recognized varying degrees of official immunity from common law and section 1983 liability, whether absolute immunity is available in a given civil rights case is not always clear. Section 1983's broad language "on its face 'admits of no immunities,' " *Owen v. City of Independence*, 445 U.S. 622, 634, 100 S.Ct. 1398, 1407, 63 L.Ed.2d 673, *rehearing denied*, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980), *quoting Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), and the legislative history of its predecessor [1] does not suggest any. *See Owen v. City of Independence*, 445 U.S. at 635–36, 100 S.Ct. at 1407–1408; *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 683–87, 98 S.Ct. 2018, 2032–34, 56 L.Ed.2d 611 (1978); *Sellars v. Procunier*, 641 F.2d 1295, 1298 (9th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981). Nevertheless, the Supreme Court has held that some officials' immunity survived section 1983's expansive language. Accordingly, where an asserted immunity was established at common law when section 1983 was adopted and where its rationale was compatible with the purposes of the Civil Rights Act, the Supreme Court has construed the statute to incorporate that immunity. *Owen v. City of Independence*, 445 U.S. at 638, 100 S.Ct. at 1409. In appropriate section 1983 cases, then, the Supreme Court has embarked upon "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Imbler v. Pachtman*, 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976).

In recent years the Supreme Court has expanded its inquiry to include officials who, though not immunized when section

---

1. Section 1 of the Civil Rights Act of 1871, 17 Stat. 13.

1983's precursor was passed, function in a manner comparable to officials shielded by immunity in 1871. *See, e.g., Butz v. Economu,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court, however, has yet to apply the functional comparability test to parole board officials. *See Martinez v. California,* 444 U.S. 277, 285 n.11, 100 S.Ct. 553, 559, 62 L.Ed.2d 481, *rehearing denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 601 (1980). Since parole boards did not exist in 1871,[2] our task is to decide whether their duties are sufficiently analogous to those of other officials who did enjoy immunity in 1871. As a starting point for our analysis, we must first examine the role of Illinois parole board members.

### A

The Illinois Prisoner Review Board replaced the Illinois Parole and Pardon Board in 1977. The procedures, powers and duties of the new Board are set forth in Ill.Ann. Stat. ch. 38, § 1003–3–2 through § 1003–3–13 (Smith-Hurd Supp.1982). Among other things the Board is empowered to: (1) hear cases of prisoners eligible for parole; (2) determine parole conditions and discharge times; (3) impose sanctions for parole violations and revoke parole for certain prisoners; and (4) determine good conduct credits. *Id.* at § 1003–3–2(a)(1)–(6). To be eligible for parole or release by the Board, a prisoner must meet the standards established by section 1003–3–3 of the statute.

Since Powell attacks the Board's decisions denying him parole, the provisions most pertinent to our analysis are sections 1003–3–4 and 1003–3–5. Section 1003–3–4 requires the Board to consider parole progress reports, materials submitted by the prisoner

seeking parole, reports by the Department of Corrections and the chief administrative officer of the institution, and any relevant information supplied by the prosecutor's office before making a decision on a parole application. Section 1003–3–5 describes the procedures for parole hearings and the criteria governing parole determinations. Pursuant to these procedures and based on two of the criteria enumerated in section 1003–3–5, the Board repeatedly refused to grant Powell parole.

### B

■ The Supreme Court in *Nixon v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), recently reaffirmed that some officials, such as judges and prosecutors, are fully exempt from liability "because of the special nature of their responsibilities." *Id.* at ——, 102 S.Ct. at 2700, *quoting Butz v. Economou,* 438 U.S. 478, 511, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). *See also Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982). From our preceding review of the Board's duties and for the reasons expressed below, we think it clear that Board members perform an adjudicatory function comparable to judges which warrants absolute immunity.[3]

The Ninth Circuit in *Sellars v. Procunier,* 641 F.2d 1295 (9th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981), recently addressed the same question raised in this case. The *Sellars* court presented the following analysis:

> We believe that parole board officials perform functionally comparable tasks to judges when they decide to grant, deny, or revoke parole. The daily task of both judges and parole board officials is the adjudication of specific cases or contro-

---

**2.** *See Sellars v. Procunier,* 641 F.2d at 1298 n.6. The Illinois General Assembly established Illinois' first parole system in 1895. *See* A. Bruce, E. Burgess & A. Harno, Parole and Indeterminate Sentence 40 (1928).

**3.** Relying on *People v. Williams,* 66 Ill.2d 179, 361 N.E.2d 1110 (1977), Powell argues that Board members act at the behest of the legislature and perform legislative tasks. *Williams* is

inapposite. The issue in *Williams* was whether certain parole provisions of the Illinois Unified Code of Corrections unconstitutionally infringed upon the judiciary's power to impose sentences in criminal cases. *Williams* did not examine the nature of the Board's function; it simply established the source of the Board's Authority.

versies. Their duty is often the same: to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake. They face the same risk of constant unfounded suits by those disappointed by the parole board's decisions.

Judges enjoy absolute immunity from civil rights suits in order to keep the judicial decision-making process pristine. As noted earlier, we expect and require the judge to be an impartial fact finder. When he or she weighs the merits of a case, we do not want the scales to be tipped by fear of litigation. The adjudicatory process simply could not work if the adjudicator had to anticipate a possible lawsuit from every dissatisfied litigant.

We believe the same degree of protection must be accorded to the decision-making process of parole board officials. Just as the decision-making process of judges must be kept free from fear, so must that of parole board officials. Without this protection, there is the same danger that the decision-maker might not impartially adjudicate the often difficult cases that come before them. If parole board officials had to anticipate that each time they rejected a prisoner's application for parole, they would have to defend that decision in federal court, their already difficult task of balancing the risk involved in releasing a prisoner whose rehabilitation is uncertain against the public's right to safety would become almost impossible. Furthermore, time spent in depositions and on the witness stand defending their actions would leave these overburdened public servants with even less time to perform their crucial tasks.

*Id.* at 1303. *Accord, Douglas v. Muncy,* 570 F.2d 499 (4th Cir. 1978); *Johnson v. Wells,* 566 F.2d 1016 (5th Cir. 1978); *Pope v. Chew,* 521 F.2d 400 (4th Cir. 1975); *Cruz v. Skelton,* 502 F.2d 1101 (5th Cir. 1974).[4]

We agree with the Ninth Circuit's view. The burden on Board members would be heavy indeed absent absolute immunity, as indicated by the proliferation of lawsuits in this Circuit, including the instant case. *See, e.g., Partee v. Lane,* 528 F.Supp. 1254 (N.D.Ill.1981); *Mason v. Melendez,* 525 F.Supp. 270 (W.D.Wis.1981); *Anderson v. Luther,* 521 F.Supp. 91 (N.D.Ill.1981).

Moreover, safeguards apart from section 1983 suits protect prisoners seeking parole. For example, Ill.Ann.Stat. ch. 38, § 1003-3-4(d)(6) obligates the Board to consider materials submitted by the prisoner, thereby ensuring that the prisoner's reasons for parole are heard. The statute also allows prisoners to subpoena witnesses and documentary evidence relating to any matter under investigation or hearing. *Id.* at § 1003-3-2(f). In addition, prisoners eligible for parole must be notified of their release date within a specified time in accordance with specified procedures. *Id.* at § 1003-3-2.1. Finally and most importantly, arbitrary parole denials by state officials can be reviewed via habeas corpus. *See, e.g., United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185 (7th Cir. 1982); *Welsh v. Mizell,* 668 F.2d 328 (7th Cir. 1982). *Cf. Solomon v. Elsea,* 676 F.2d 282 (7th Cir. 1982) (per curiam) (habeas corpus challenge to parole denial by federal parole officials). These procedures and remedies adequately guard prisoners' parole rights without impairing the performance of Board members.

### III

Possibly anticipating that his money damages claim might prove fruitless, Powell argues that his request for declaratory relief should not be dismissed. We agree.

In *Hansen v. Ahlgrimm,* 520 F.2d 768 (7th Cir. 1975), we recognized that judicial immunity under the Civil Rights Act

---

4. The Third Circuit draws a distinction between adjudicatory and administrative acts of parole board members. *See Thompson v. Burke,* 556 F.2d 231 (3d Cir. 1977). It appears that all the tasks of Illinois Prisoner Review Board members relate to their adjudicatory function. In any event, the only conduct challenged by Powell concerns parole decisions, which clearly are adjudicatory in nature.

does not preclude declaratory relief. To the extent that Powell's allegations and statistics tend to demonstrate impermissible discrimination by Board members, a live controversy remains. Under these circumstances, declaratory relief may serve some purpose.

## IV

For the foregoing reasons, the district court is reversed as to the section 1983 issue. This suit is remanded for further proceedings respecting Powell's declaratory judgment claim.