Clarence C. TROTTER, et al., Plaintiffs,

v.

Paul J. KLINCAR, Individually and as Acting Chairman of the Prisoner Review Board; William V. Kauffman, Individually and as Executive Secretary of the Prisoner Review Board; Kathryn Ewers, Individually and as Institute Officer of the Prisoner Review Board; Sharon Everett, Individually and as Hearing Officer of the Prisoner Review Board; The Prisoner Review Board of the State of Illinois; Anthony Scillia, Individually and as Deputy Director of Community Services of the Department of Corrections; Harold Thomas, Individually and as Superintendent of Community Supervision Area 1 of the Department of Corrections; Robert Guthrie, Individually and as Hearing Officer of the Department of Corrections; and the Department of Corrections of the State of Illinois, Defendants.

No. 82 C 7080.

United States District Court, N.D. Illinois, E.D.

May 26, 1983.

Robert L. Graham, Ann Courter, Jenner & Block, Chicago, Ill., for plaintiffs.

Laurel Black, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Clarence C. Trotter ("Trotter"), individually and on behalf of others similarly situated, sued the Prisoner Review Board of Illinois, four officials of the Prisoner Review Board, the Illinois Department of Corrections and three Department of Corrections officials, seeking injunctive, declaratory and damages relief for deprivation of civil rights.[1] Trotter claims that he was denied a preliminary parole revocation hearing as required by *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Presently pending before the Court is Trotter's motion for partial summary judgment as to his individual claims, and defendants' motion to dismiss or, in the alternative, for summary judgment. For reasons set forth below, Trotter's motion is denied; defendants' motion for summary judgment is granted.

Trotter's complaint states that he was on parole under authority of the Illinois Prisoner Review Board beginning in April, 1981. On May 27, 1982, Trotter was arrested for allegedly committing burglary and theft; his bail was set at $12,000 on May 28, 1982. A parole violation warrant was issued against Trotter on June 7, 1982, as well as a "parole hold," which prevented him from posting bond and obtaining release. Trotter's preliminary parole hearing was not held until September 15, 1982, at Cook County Jail. Trotter has raised constitutional challenges to several aspects of his preliminary parole revocation hearing.[2] Subsequently, Trotter was convicted of burglary and sentenced to eight years to the Illinois Department of Corrections on Janu-

ary 27, 1983. He received a final parole revocation hearing on February 15, 1983.

Although both defendants and Trotter in their motions address the adequacy of Trotter's preliminary parole revocation hearing, this Court must first establish whether it has jurisdiction to entertain Trotter's individual and class claims for injunctive and declaratory relief. Therefore, we will discuss Trotter's individual claim for damages.

### Injunctive and Declaratory Relief

■ To invoke federal jurisdiction, one must allege that an actual case or controversy exists in order to satisfy Article III of the Constitution. *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968); *United States Parole Commission v. Geraghty*, 445 U.S. 388, 395–97, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). Absent a showing of present adverse effects, past exposure to illegal conduct does not demonstrate a present case or controversy for purposes of injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974).

■ Thus, even if we assume that Trotter was denied his right to a preliminary parole revocation hearing, this does not establish a real and immediate threat that he would again be denied a preliminary parole revocation hearing in the future, entitling him to equitable relief. *Los Angeles v. Lyons*, —— U.S. ——, ——, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). In *Lyons*, the Supreme Court noted that in order to establish an actual controversy the respondent, who alleged that he was the victim of a police chokehold, would have had to allege that he would again encounter the police, and that either all police officers always choke citizens whom they encounter, or that the City ordered police officers to act in

---

1. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and 28 U.S.C. §§ 2201 and 2202.

2. Specifically, Trotter asserts that he was denied a *prompt* preliminary hearing, that only one of his two attorneys were permitted to

attend the hearing, that he was not afforded an opportunity to confront and cross-examine adverse witnesses at the hearing and that defendants prevented him from making a tape recording of the hearing.

such a manner, *id.* at ——, 103 S.Ct. at 1667.

In the instant case, Trotter is presently incarcerated as a result of another crime committed while he was on parole. If he were to receive a preliminary probation revocation hearing at this point, he of course could not be released from custody even if a finding of no probable cause were made, for he is no longer on parole. In order to establish an actual controversy entitling him to injunctive relief, Trotter would have to allege that he would be released from prison under "mandatory supervised release," [3] and thus subject to the jurisdiction of the Prisoner Review Board, which is likely but not absolutely certain. He would, moreover, have to violate the terms and conditions of his release before becoming entitled to a preliminary hearing pursuant to *Morrissey v. Brewer.* This prospect of Trotter violating the terms of his release is simply too speculative a basis upon which to grant him award of injunctive relief.

■ The absence of a case or controversy also precludes an award for declaratory relief. 28 U.S.C. § 2201 provides for the issuance of declaratory judgments "[i]n a case of actual controversy." This actual controversy requirement is a jurisdictional prerequisite of constitutional dimension. *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979), and the requirements of a justiciable case or controversy are no less strict in declaratory judgment actions than in any other type of action. *Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 1387, 89 L.Ed. 1725 (1945); *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.,* 439 F.2d 871, 873 (1st Cir.1971).

■ Trotter also purports to represent a class of persons who are on parole and who have been, or will be, denied a preliminary parole revocation hearing. As we have already observed, Trotter is no longer on parole. Moreover, in the instant case, a class has not been certified. Because Trotter's individual claim for injunctive and declara-

tory relief fails to present a case or controversy for purposes of Article III, Trotter is no longer a suitable representative of the class he seeks to represent. This case does not resemble *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), where the district court had already certified a class prior to the point at which appellant satisfied the durational residency requirement which she had challenged. Here, because no class has been certified, no class members have yet acquired a legal status separate from the interest asserted by Trotter. *Id.* at 399, 95 S.Ct. at 557. And we do not agree with Trotter that this case is one that is "capable of repetition, yet evading review." First, Trotter is neither on parole nor being detained pending a preliminary parole revocation hearing. Second, Trotter's claim that he was denied several constitutional rights remains to be considered as part of his damages claim; this means that the claim does not "evade review." *Los Angeles v. Lyons,* —— U.S. ——, ——, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). Moreover, "the capable of repetition doctrine applies only in exceptional situations, and generally only where the· named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Id.* As we have noted, Trotter has not made such a demonstration.

Trotter cites *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), for the proposition that he retains a "personal stake" in this matter for purposes of class certification even if his individual substantive claims do not present a case or controversy. The respondent in *Geraghty,* a plaintiff who sought to represent a class, challenged parole release guidelines and attempted to appeal a ruling denying class certification although he had been released from prison during the pendency of the appeal. While the Supreme Court held that a class action does not become moot upon expiration of a named plaintiff's claim or despite denial of class certification, the Court expressly limited its holding to the *appeal* of the denial

---

**3.** *See* Ill.Rev.Stat. ch. 38 § 1003–3–1 *et seq.*

of the class certification. *Id.* at 404, 100 S.Ct. at 1213. And the Court added that a named plaintiff whose claim expires may not appeal a decision on the merits until a class has been certified. In the instant controversy, the issue of class certification has not been addressed by any of the parties. Since Trotter's personal claim for injunctive and declaratory relief fails to present a case or controversy for purposes of Article III, and since a class has not been certified, Trotter is an inappropriate class representative, *Geraghty* notwithstanding. We therefore grant defendants' motion for summary judgment both as to Trotter's individual claims and the class claims for injunctive and declaratory relief.

### Damages Relief

Our decision that Trotter's individual and purported class claims for injunctive and declaratory relief fail to present a case or controversy does not, of course, preclude him from claiming individual damages for violations of his constitutional rights.

▮ Initially, we observe that the Court of Appeals for the Seventh Circuit recently held that Illinois Prisoner Review Board officials are absolutely immune from suit under 42 U.S.C. § 1983 for their official activities in processing parole applications. *United States v. Irving,* 684 F.2d 494 (7th Cir.1982). In so doing, the Court declared that Prisoner Review Board members perform an adjudicatory function comparable to judges, thus entitling the former to absolute immunity. *Id.* at 496. While Trotter would have this Court distinguish between adjudicatory and administrative actions of parole board officials as the Third Circuit

has done, *see Thompson v. Burke,* 556 F.2d 231 (3d Cir.1977), we decline to do so.[4] The Seventh Circuit noted this distinction and expressly declined to adopt it, observing that "[i]t appears that all the tasks of Illinois Prisoner Review Board members relate to their adjudicatory function." *United States v. Irving,* 684 F.2d 494, 497 n. 4 (7th Cir.1982). We also agree with defendants' contention that parole officials who decide parole applications are indistinguishable from parole officials who conduct preliminary and final parole revocation hearings. As a result, we hold that defendants Klincar, Kauffman, Ewers, Everett and the Illinois Prisoner Review Board are immune from Trotter's claim for damages relief pursuant to § 1983. Trotter's motion for partial summary judgment states that defendant Guthrie was present and controlled the preliminary parole revocation hearing on September 15, 1982. This indicates that he acted in an adjudicatory capacity; the considerations in *Irving, supra,* which led the Seventh Circuit to hold that Illinois Prisoner Review Board members are entitled to absolute immunity, apply with equal force to Guthrie, notwithstanding the fact that he is employed by the Department of Corrections.[5]

▮ The remaining defendants are the Illinois Department of Corrections, Anthony Scillia and Harold Thomas, Department of Corrections officials. Defendants argue that under the Eleventh Amendment they are also immune from damages liability.[6] In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1973), the Supreme Court set forth the limitations imposed by the Eleventh Amendment upon a federal

---

4. *But see Harris v. Powers,* 520 F.Supp. 111 (W.D.Wis.1981), in which the Court declared that the decision of defendants concerning the site of a parole revocation hearing was a ministerial rather than adjudicatory action, thus not entitling defendants to absolute or quasi-judicial immunity.

5. Indeed, it is conceivable that defendants Scillia and Thomas could be entitled to absolute immunity as well; from Trotter's motion, we know only that "[d]efendants Scillia and Thomas were consulted and did participate in decision making in Mr. Trotter's case." It is doubt-

ful, however, that these two defendants performed an adjudicatory role in the instant matter, and we therefore decline to hold that they are entitled to absolute immunity.

6. The Eleventh Amendment provides that:

 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

court in awarding damages relief in § 1983 cases. According to the Court, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Id.* at 677, 94 S.Ct. 1362. It is clear that § 1983 did not abrogate the States' Eleventh Amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). As a result of these decisions, there is little question that an award of monetary damages in a § 1983 action, to be paid by the state, is improper. *Owen v. Lash,* 682 F.2d 648, 654 (7th Cir.1982). State agencies are immune from damages liability under § 1983 as well, *Rucker v. Higher Educational Aids Board,* 669 F.2d 1179 (7th Cir.1982), for suits against the States are barred not only when they are named defendants, but also when they are the parties in fact. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). The Illinois Department of Corrections is therefore immune from Trotter's damages claims.

The Eleventh Amendment, however, would not necessarily bar a § 1983 action seeking to hold defendants Scillia and Thomas personally liable for unconstitutional activity. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1979); *Adden v. Middlebrooks,* 688 F.2d 1147, 1150 (7th Cir.1982). This is so because when a state officer deprives an individual of a federal constitutional right, that official comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States. *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908).

▇ Nevertheless, prison officers and officials in state departments of corrections are entitled to qualified good faith immunity when damages are sought against them

under § 1983. *Procunier v. Navarette,* 434 U.S. 555, 561–62, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978); *Hayes v. Thompson,* 637 F.2d 483, 489 (7th Cir.1980). We need not address the issue of whether Scillia and Thomas are entitled to qualified immunity, however, for we hold that none of Trotter's constitutional rights were violated by the procedure afforded to him and of which he presently complains.

First, Trotter argues that he did not receive a prompt preliminary parole revocation hearing, asserting that August 16, 1982, was the earliest date set by defendant for the hearing, and that the actual hearing did not take place until September 15, 1982, several months after the alleged parole violation. Second, he argues that he was not afforded an opportunity to confront and cross-examine witnesses at the hearing, for the hearing officer did not order those witnesses to answer Trotter's questions. Third, the failure to admit to the hearing a second attorney involved in Trotter's case allegedly deprived him of his right to counsel. Finally, refusing to allow Trotter's counsel to tape record the hearing violated his right to due process.

In considering Trotter's claims, we must return to the Supreme Court's opinion in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It is important to emphasize that the Supreme Court stressed that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.* at 480, 92 S.Ct. at 2600. The Court added that

due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. Such an inquiry should be seen as in the nature of a "preliminary hearing" to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that

would constitute a violation of parole conditions.

*Id.* at 485, 92 S.Ct. 2602 (citations omitted). *Morrissey* explicitly requires that preliminary hearings include hearing officers who are not directly involved in the case, notice of the hearing and a statement of the alleged violations, an opportunity for the parolee to speak and present evidence, a right to confront adverse witnesses and a written summary of the hearing. *Id.* at 485–87, 92 S.Ct. 2602–03. In some instances, parolees and probationers may be entitled to appointed counsel at the preliminary hearing. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). It is with these standards in mind that we review Trotter's preliminary parole revocation hearing.

 *Morrissey* does not require that preliminary parole revocation hearings be held within a specific time period. The Seventh Circuit, moreover, has observed that the liberty interest of a parolee held in jail because he or she is accused of committing a new crime is not identical to the liberty interest involved in a case where an individual is simply accused of violating the terms of parole. *Doyle v. Elsea,* 658 F.2d 512, 516 (7th Cir.1981). The instant case is thus distinguishable from *Fowler v. Cross,* 635 F.2d 476 (5th Cir.1981), where the Court held that the failure to hold a preliminary parole revocation hearing for fifty days after the date scheduled for the hearing violated *Morrissey.* In that case, the appellant was not in custody and accused of committing another crime, as was Trotter, but rather, had merely been arrested on a parole violator's warrant. Most importantly, there is no evidence that the delay in the instant case rendered information less "fresh" or sources "unavailable," two of the concerns behind the Supreme Court's prompt hearings requirement. *Morrissey,* 408 U.S. 485, 92 S.Ct. 2602.

 We also decline to hold that Trotter's Sixth Amendment right to counsel

was denied by the failure to permit both of his counsel to attend the hearing, or that he was denied his Sixth Amendment right to confront witnesses when the hearing examiner failed to instruct witnesses to answer his attorney's questions. While both practices are questionable, we are mindful of the nature of the preliminary *Morrissey* hearing: it is a procedure to determine whether there is probable cause to believe that the parolee has violated parole conditions and is *not* equivalent to a criminal prosecution. *Id.* at 480–85, 92 S.Ct. at 2600–02. It is, moreover, the first stage in a two-stage hearing procedure and is not the final determination of parole revocation. Thus, in light of *Morrissey,* we decline to hold that these two practices rise to the level of federal constitutional violations. The same result must obtain from Trotter's claim that he was unable to make a recording of the preliminary hearing. *Morrissey* requires no more than providing the parolee with a *summary* of the hearing. *Id.* at 485–87, 92 S.Ct. at 2602–03.[7] Accordingly, we decline to hold defendants Scillia and Thomas liable for violations of Trotter's constitutional rights in connection with his preliminary parole revocation hearing.

In Count II of his complaint, Trotter asserts that defendants' policies, practices and conduct violate Article I, § 2 of the Illinois Constitution; Count V alleges that these policies also violate defendants' own Rules Governing Parole. Because of our disposition of the present motion, we decline to exercise jurisdiction over these pendent state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, defendants' motion for summary judgment is granted; Trotter's motion for partial summary judgment is denied. It is so ordered.

---

**7.** *Cf. Augello v. Warden, Metropolitan Correctional Center,* 470 F.Supp. 1230 (E.D.N.Y.1979), where the Court held that procedures which precluded permanent recording of a prelimi-

nary parole revocation hearing did not deprive the petitioner of any statutory or constitutional rights.