**William J. BENSON, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

No. 96 C 7886.

United States District Court, N.D. Illinois, Eastern Division.

July 7, 1997.

Andrew B. Spiegel, Law Office of Andrew B. Spiegel, Wheaton, IL, for Plaintiff.

Tony J. Masciopinto, U.S. Attorney's Office, Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is defendants United States of America and Tony Morton's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). For the reasons that follow, the court grants defendants' motion.

1. Unless otherwise indicated, the facts in the Background section are the uncontested facts taken from the parties' Local Rule 12(M) and 12(N) statements.

2. *See United States v. Benson*, 941 F.2d 598 (7th Cir.1991).

3. Benson denies he was paroled, and asserts instead that he was placed on probation. See Pl.'s 12(N)(3) Statement ¶ 1. Benson's contentions are completely unfounded. He was paroled, and his parole is to end July 30, 1997. *See*

### I. BACKGROUND [1]

Plaintiff William J. Benson was convicted in December 1989 of tax evasion and willful failure to file tax returns, and began serving his four–year sentence on May 29, 1990. Benson was scheduled to be paroled on September 27, 1991. Shortly before that date, the Seventh Circuit Court of Appeals reversed Benson's conviction,[2] and the trial judge entered a release order releasing Benson from prison pending a new trial. The Bureau of Prisons released Benson on September 4, 1991.

On February 2, 1994, Benson again was tried and convicted on the same tax charges. The trial judge imposed the same four–year sentence, to be followed by five years' probation, and ordered Benson to pay the costs of his prosecution. Benson began serving his second four–year sentence on November 10, 1994. However, because of the time that he already had served, Benson was paroled on November 28, 1994.[3] It was at this time that defendant Tony Morton became Benson's parole officer. The Seventh Circuit affirmed Benson's second conviction and sentence.[4]

Benson's parole is scheduled to end on July 30, 1997. In return for early release from prison, Benson agreed to certain parole conditions, including that he (1) would remain within the limits of the Northern District of Illinois and not leave the jurisdiction without the permission of his parole officer; (2) would not violate any law; (3) would not associate with persons engaged in criminal activity; (4) would submit a complete and truthful monthly report as required by his parole officer; and (5) would make a diligent effort to satisfy the court's assessment of the costs of his prosecution and, upon request, would provide financial information relevant to the payment of the assessment.

Ex. in Supp. of Defs.' Mot. for Summ. J. Ex. F. At that time, his probation presumably will begin. *See id.* Ex. D at 2 (sentencing order stating that probation is to run consecutive to sentence of imprisonment). Benson also disputes whether he was released on the proper dates, *see* Pl.'s 12(N)(3) Statement ¶ 2, but that issue is irrelevant to the resolution of this motion.

4. *See United States v. Benson*, 67 F.3d 641 (7th Cir.1995).

Shortly after being paroled, Benson requested Morton's permission to travel to California to speak on the invalidity of the sixteenth amendment. Morton denied permission because Benson had failed to begin repaying his assessment of costs and Morton expected Benson to advise or encourage people to violate federal income tax laws under the premise that the sixteenth amendment, which established the federal income tax, was invalid. Benson objected to Morton's denial of permission to travel, but the United States Parole Commission affirmed the denial.

Benson also failed to complete monthly supervision reports required by Morton as a condition of Benson's parole. While he submitted partially completed reports, Benson failed to provide all of the required information regarding his finances. Benson contended that he had no obligation to disclose financial information such as monthly income and expenses, assets, and purchases. Benson also refused to disclose the sources of money that he used to reduce his assessment of costs, stating that the money was anonymously donated. Benson also denied that he was a parolee, stating that he signed the certificate of parole under duress.

Nonetheless, on November 9, 1995, Morton approved Benson's request to travel throughout the United States for work as long as Benson adhered to his parole conditions. Morton subsequently approved other travel requests by Benson.

In November 1996, Benson filed this civil rights lawsuit against Morton in his individual capacity, the United States, and several other individuals. In Count I, which attempts to state claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Benson alleges that Morton violated Benson's first amendment rights by threatening him with incarceration if he spoke out against the sixteenth amendment or traveled beyond the Northern District of Illinois to give speeches regarded the sixteenth amendment.[5] In Count II, Benson

alleges that Morton engaged in three conspiracies under 42 U.S.C. § 1985: to release grand jury materials illegally in an attempt to prejudice the jury against Benson; knowingly and falsely to represent to the trial judge that Benson had more time to serve on his original four–year sentence; and knowingly and falsely to deny Benson his right to travel and speak out on matters of federal corruption by threatening Benson with incarceration. Benson also alleges that the United States is liable for the acts of Morton, its employee, under *Bivens* and section 1985. Benson seeks compensatory and punitive damages and attorneys fees on each count.

Morton and the United States now move for summary judgment on Benson's entire cause of action.

## II. DISCUSSION

### A. *Individual defendants other than Morton*

On May 21, 1997, the court granted the United States' oral motion to dismiss defendants Joan Bainbridge Safford and Ann Marie Klaprat as parties defendant pursuant to Federal Rule of Civil Procedure 4(m), and dismissed those defendants from Benson's lawsuit.

In addition, claims against unknown persons, such as the "Unknown conspirators John Doe 1, 2, 3, etc." named by Benson, are "meaningless and uncompensable." *Collier v. Rodriguez,* No. 96 C 0023, 1996 WL 535326, *4 (N.D.Ill. Sept.18, 1996); *see also Copeland v. Northwestern Memorial Hosp.,* 964 F.Supp. 1225, 1234 (N.D.Ill.1997). Benson failed to identify, sue, or serve any named defendants in place of the unknown defendants. Accordingly, the court now dismisses the "Unknown conspirators John Doe 1, 2, 3, etc." as parties defendant.

Consequently, only Morton and the United States remain as defendants, and the motion for summary judgment is only as to those two defendants.

---

5. Despite what Count I alleges, the parties' 12(M) and 12(N) statements establish that Morton did not prevent Benson from speaking out about the

sixteenth amendment or federal tax laws, but only from traveling outside of the Northern District of Illinois to do so.

## B. Standard for deciding a motion for summary judgment

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in his pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). All reasonable inferences must be viewed in favor of the non–moving party. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989).

## C. Count I as to Morton

Morton contends that summary judgment in his favor and against Benson on Count I is warranted for three reasons: Morton is entitled to absolute immunity; Morton is entitled to qualified immunity; and Benson's allegations are premature under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

### 1. Absolute immunity

Morton first contends that he is entitled to absolute immunity because he was performing a judicial function when he decided to deny Benson's requests to travel outside of the Northern District of Illinois.

■ The Supreme Court has granted absolute immunity to judges in the performance of their judicial duties. *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir.1995) (citing *Nixon v. Fitzgerald*, 457 U.S. 731, 745, 102 S.Ct. 2690, 2699, 73 L.Ed.2d 349 (1982)). Whether other officials also are entitled to absolute immunity depends on " ' "the nature of the function performed, not the identity of the actor who performed it." ' " *Walrath v. United States*, 35 F.3d 277, 280–81 (7th Cir. 1994) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988))).

Thus, officials whose responsibilities are "functionally comparable" or "closely analogous" to the adjudicative functions of judges, or are " 'intimately associated' with the judicial process itself," are entitled to absolute immunity for acts arising out of their adjudicative responsibilities. *Hulsey*, 63 F.3d at 356 (citing *Butz v. Economou*, 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978)); *Walrath*, 35 F.3d at 281 (citing *Buckley*, 509 U.S. at 270–71, 113 S.Ct. at 2614–15; *Butz*, 438 U.S. at 511–15, 98 S.Ct. at 2913–15; *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976)). However, purely administrative decisions are not regarded as judicial acts, and therefore are not shielded from review by absolute immunity. *See Thompson v. Duke*, 882 F.2d 1180, 1182–83 (7th Cir.1989) (citing *Forrester*, 484 U.S. at 227–28, 108 S.Ct. at 544), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990).

Most federal courts have extended absolute immunity under the foregoing principles to parole board members for their decisions to grant, deny, or revoke parole. *See, e.g., Walrath*, 35 F.3d at 281 (collecting cases). The courts have found that parole board members, in deciding to grant, deny, or revoke parole, " 'act in a quasi-judicial capacity, as an arm of the sentencing judge.' " *Id.* (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1301–02 (9th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981)).

■ The Seventh Circuit has gone so far as to say that parole board members, whenever they carry out their official responsibilities, always are functionally comparable to judges, and therefore always are absolutely

immune from suit arising out of their official acts. *See Wilson v. Kelkhoff,* 86 F.3d 1438, 1444 (7th Cir.1996); *Walker v. Prisoner Review Board,* 769 F.2d 396, 398 (7th Cir.1985), *cert. denied,* 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986). However, the Seventh Circuit has not expressly applied this broad conclusion to parole officers who are not parole board or commission members. Rather, it has recognized that parole officials who are not parole board members are entitled to absolute immunity only "under circumstances where they perform acts with prosecutorial or judicial analogs." *Wilson,* 86 F.3d at 1444 (citing *Walrath,* 35 F.3d at 282). *See also Thompson,* 882 F.2d at 1183 (stating that the Supreme Court made clear in *Forrester* that courts should recognize a difference between purely administrative activities and those that are part of the judicial process). Thus, the question here is whether Morton, in denying permission to Benson to travel outside of the Northern District of Illinois, was acting more like an administrator or a judge.

Several federal courts have held that a parole official is entitled to absolute immunity for the imposition of parole conditions. *See, e.g., Anderson v. Boyd,* 714 F.2d 906, 909 (9th Cir.1983) (citing *Morrissey v. Brewer,* 408 U.S. 471, 477–78, 92 S.Ct. 2593, 2598–99, 33 L.Ed.2d 484 (1972)); *Stewart v. Smallwood,* No. 92 Civ. 4043(SS), 1993 WL 77381, *1 (S.D.N.Y. March 15, 1993) (citations omitted). This is so because "the imposition of parole conditions is an integral part of a decision to grant parole." *Anderson,* 714 F.2d at 909 (citing *Morrissey,* 408 U.S. at 478, 92 S.Ct. at 2598–99). " 'The essence of parole is the release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.' " *Anderson,* 714 F.2d at 909 (citing *Morrissey,* 408 U.S. at 477, 92 S.Ct. at 2598). Thus, "it follows that [parole officials] cannot be held liable for conduct relating to the imposition of parole conditions." *Anderson,* 714 F.2d at 909.

In this case, Morton did not himself impose parole conditions on Benson. However, he was charged with ensuring that Benson complied with his parole conditions, and was given the authority to decide whether to grant Benson exemptions from the travel restrictions that were part of his parole conditions. Thus, Morton had the responsibility, if not to impose parole conditions on Benson, then to enforce parole conditions on Benson.

As the Seventh Circuit has noted, parole officials' actions that are "functionally comparable to those of the judiciary 'include not only the actual decision to [grant, deny, or revoke] parole, but also the activities that are part and parcel of the decision process.' " *Walker,* 769 F.2d at 398 (quoting *Trotter v. Klincar,* 748 F.2d 1177, 1182 (7th Cir.1984)). Morton's activities in enforcing the terms of Benson's parole are akin to a court's actions in enforcing an order; that is, they are "functionally comparable" to judicial actions.

In addition, Morton was given express authority to make discretionary determinations about whether or not Benson should be permitted to travel outside of the Northern District of Illinois. In making such determinations, Morton was not acting simply as an administrator. Rather, he was acting as would a judge in adjudicating a specific case or controversy. *See United States ex rel. Powell v. Irving,* 684 F.2d 494, 496 (7th Cir.1982) (quoting *Sellars,* 641 F.2d at 1303) (" '[t]he daily task of both judges and parole board officials is the adjudication of specific cases and controversies' "). That is, Morton, in deciding whether to grant permission to Benson to travel, had a duty similar to that of judges: " 'to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake.' " *Id.* Thus, Morton and judges " 'face the same risk of constant unfounded suits by those disappointed by [their] decisions,' " *id.,* which is the rationale for making them immune from such suits.

Because Morton bore quasi–judicial responsibilities in deciding whether or not to allow Benson a reprieve from the travel restrictions imposed on him as conditions of parole and in enforcing the parole conditions, he should be accorded the same protection that is accorded judges and parole board members. Consequently, the court finds that Morton is entitled to absolute immunity for his actions in enforcing the terms of Benson's parole, including his decision to

deny Benson permission to travel outside of the Northern District of Illinois.

Because Morton is absolutely immune from suit based on his decision to deny Benson relief from the travel restrictions imposed by the conditions of Benson's parole, he deserves summary judgment in his favor on Count I. Accordingly, the court grants Morton's motion for summary judgment on Count I.

### 2. Qualified immunity

■ While the court's conclusion that Morton is entitled to absolute immunity from Benson's lawsuit disposes of Benson's cause of action against Morton, the court nonetheless will address Morton's qualified immunity argument, since it finds that Morton also is entitled to qualified immunity.

" 'Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson,* 86 F.3d at 1446 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The Seventh Circuit has developed a two-part qualified immunity inquiry: " ' "(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?" ' " *Hill v. Shelander,* 992 F.2d 714, 717 (7th Cir.1993) (quoting *Rakovich v. Wade,* 850 F.2d 1180, 1210 (7th Cir.) (*en banc*) (quoting *Wade v. Hegner,* 804 F.2d 67, 70 (7th Cir.1986)), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)).

Parole conditions that restrict a parolee's liberty are constitutionally permissible. Parolees " 'do not enjoy "the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions." ' " *Walrath v. United States,* 830 F.Supp. 444, 446 (N.D.Ill.1993) (quoting *United States v. Thomas,* 729 F.2d 120, 123 (2d Cir.1984) (quoting *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2600), *cert. denied,* 469 U.S. 846, 105 S.Ct. 158, 83 L.Ed.2d 95 (1994)). *See also* 18 U.S.C. § 4209 (authorizing the United States

Parole Commission to impose conditions on its charges).

■ Consequently, a parole condition that restricts the parolee's right to travel outside of a particular jurisdiction also is constitutionally permissible. *See Alonzo v. Rozanski,* 808 F.2d 637, 637–38 (7th Cir. 1986) (upholding parole condition that required parolee to obtain permission of probation service before leaving the Northern District of Illinois). In *Alonzo,* the Seventh Circuit found that a parolee gave up his liberty interest in choosing his place of abode when he was convicted of a crime. The court stated:

Alonzo committed crimes, and the punishment for these crimes includes stripping him of control over where he shall live. While in prison, Alonzo had no say at all about where he could go. A prisoner has neither a liberty nor a property interest in the place of his confinement. .... Alonzo's control of abode was extinguished, for the entire term of his sentence, by the judgment of conviction. Some choice was restored to Alonzo when he was paroled, but Alonzo received no more than statutes and binding regulations gave him. How much freedom Alonzo received is a question of positive rather than natural law. Positive law allows a parolee to move without restraint in the district of his release, unless the conditions attached to his parole enlarge or restrict that liberty.

*Alonzo,* 808 F.2d at 638 (citations omitted).

Benson is in the same boat as Alonzo. When he was convicted and incarcerated, Benson gave up a substantial amount of his freedom, including, obviously, his freedom to live or travel outside of the prison walls. Now that he is paroled, Benson has been restored some freedom, but still is restricted by the terms of his parole from traveling outside of the Northern District of Illinois without his parole officer's permission. As in *Alonzo,* the restriction on traveling outside of this jurisdiction is an acceptable parole condition. Thus, Morton violated no constitutional right of Benson by refusing him permission to travel outside of this judicial district for speaking engagements.

Benson claims, however, that Morton also violated his first amendment rights by not allowing him to speak out against the sixteenth amendment. Benson mischaracterizes Morton's actions. Morton never prohibited Benson from speaking out against the sixteenth amendment; Morton simply denied Benson permission to leave the Northern District of Illinois to do so. Even if one reason for the denial of permission to travel was the subject matter of Benson's speeches, the other reason was that Benson was not complying with the conditions of his parole. In any event, Morton effectively allowed Benson to speak out against the sixteenth amendment, as long as his speeches took place in the Northern District of Illinois.

The foregoing analysis disposes of both prongs of the qualified immunity test: Morton's conduct as described by Benson does not constitute a constitutional violation, since the constitutional standards in existence at the time in question clearly established that Morton could deny Benson permission to travel outside of the Northern District of Illinois as a valid parole condition.

Accordingly, Morton is entitled to qualified immunity for his decision denying Benson permission to travel outside of the Northern District of Illinois, and therefore is entitled to summary judgment in his favor and against Benson on Count I.

### 3. Heck v. Humphrey

Morton contends that Benson's allegations against Morton are barred by *Heck v. Humphrey*, which holds that in order to recover damages for an allegedly "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff first must prove that the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). Morton contends that before this court can

entertain Benson's claim for damages arising out of his allegedly unconstitutional detention in the Northern District of Illinois, Benson must prove that the allegedly unconstitutional parole condition requiring him to remain within the Northern District of Illinois was invalidated.

The court declines to address the merits of Morton's *Heck* argument because it already has decided to grant summary judgment in favor of Morton and against Benson on immunity grounds.

### D. Count II as to Morton

Morton contends that summary judgment in his favor is warranted on Count II, which purports to allege a claim under 42 U.S.C. § 1985, because federal actors acting under color of federal law are not subject to suit under section 1985. Morton is correct that he deserves summary judgment on Count II, but he is mistaken about the reason.

Actions of the federal government and its officials are beyond the purview of section 1983, which applies only to state actors acting under color of state law. *See District of Columbia v. Carter*, 409 U.S. 418, 423–25, 93 S.Ct. 602, 605–07, 34 L.Ed.2d 613 (1973). Section 1985 does not have the same state action requirement. Thus, federal officials can be sued in their personal capacities under section 1985. *See, e.g., Kaufmann v. United States*, 840 F.Supp. 641, 648 (E.D.Wis.1993) (citations omitted).[6]

However, section 1985 requires that the plaintiff allege that defendants acted with racial or other class–based animus in conspiring to deprive the plaintiff of his civil rights. *See United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 834–37, 103 S.Ct. 3352, 3359–60, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).[7] Benson has utterly

---

**6.** Federal officials cannot be sued in their official capacities under section 1985, though, because a suit against a federal official in his official capacity is a suit against the United States, *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir.1987) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114

(1985)), and the United States cannot be sued under section 1985. *See section II.E. below.*

**7.** Section 1985(2), which prohibits conspiracies to intimidate witnesses in federal court, does not require a racial or other class–based motivation. *Kush v. Rutledge*, 460 U.S. 719, 726–27, 103 S.Ct.

failed to do so. He has not so much as hinted at a racial or other class–based motivation on the part of Morton. In fact, the allegations of Benson's complaint and the parties' Local Rule 12(M) and 12(N) statements make clear that racial or other class–based animus was not the motivating force behind Morton's actions.

Accordingly, the court grants summary judgment in favor of Morton on Count II.

### E. Counts I and II as to the United States

 The United States contends that it is not subject to a *Bivens* lawsuit, and therefore that it deserves summary judgment on Count I. The court agrees. The Supreme Court has unequivocally held that *Bivens* actions, which apply only to individuals, cannot be brought against the federal government. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 483–486, 114 S.Ct. 996, 1004–06, 127 L.Ed.2d 308 (1994).

Similarly, the United States is not subject to suit under section 1985. The United States may not be sued without its consent, *Ickes v. Fox,* 300 U.S. 82, 96, 57 S.Ct. 412, 417, 81 L.Ed. 525 (1937), and the United States has not consented to be sued under the civil rights statutes, including section 1985. *See Unimex, Inc. v. United States Dep't of Housing and Urban Dev.,* 594 F.2d 1060, 1061 (5th Cir.1979) (citations omitted).

Moreover, Benson's claims against the United States were only derivative of his claims against Morton. Thus, even if the United States could be sued in a *Bivens* action or under section 1985, since Benson has no valid claims against Morton, he has no valid claims against the United States.

Accordingly, the court grants summary judgment in favor of the United States and against Benson on Count I, Benson's *Bivens* claim, and Count II, his section 1985 claim.

### III. CONCLUSION

For the foregoing reasons, the court dismisses "Unknown conspirators John Doe 1,2,3, etc." as parties defendant; grants de-

fendants United States of America and Tony Morton's motion for summary judgment; and enters judgment on Counts I and II against plaintiff William J. Benson and in favor of defendants United States and Morton.

1483, 1488, 75 L.Ed.2d 413 (1983). Benson's

claim does not arise under section 1985(2).