Daniel FATICO, Petitioner,

v.

Larry KERR, Superintendent, Oxford Federal Correctional Institution, Respondent.

No. 83–C–377–S.

United States District Court, W.D. Wisconsin.

July 21, 1983.

As Amended Nov. 29, 1983.

---

Eisenberg, Giesen, Ewers & Hayes, Madison, Wis., for petitioner.

U.S. Atty. John R. Byrnes, Madison, Wis., for respondent.

SHABAZ, District Judge.

Daniel Fatico, an inmate at the Federal Correctional Institution at Oxford, Wisconsin, has petitioned for a writ of habeas corpus from this Court under 28 U.S.C. § 2241 (1976). The petition is denied.

## I. *Introduction*

Mr. Fatico was indicted in 1976, along with three others, for conspiracy to receive, and for receiving, goods stolen from foreign commerce during three truck hijackings which took place in 1971. Apparently, the indictments were based largely on the testimony of unindicted co-conspirators in the hijackings, Salvatore Montello and Manuel Llauget, men with extensive criminal records participating in the Government's witness protection program. After prosecution of charges against Fatico relating to one of the hijackings ended in a mistrial, petitioner pleaded guilty[1] to one count in another indictment of conspiracy to possess furs stolen from foreign commerce having a value in excess of $100.[2] On the Government's motion, the Court dismissed the remaining charges.

Final disposition of the charges against Fatico was delayed pending resolution of certain sentencing issues by the trial court.[3]

1. Although Fatico's memorandum in support of his petition indicates that he plead no contest, rather than guilty, to count three of the indictment in Case No. 76–CR–81, Exhibit B of his petition demonstrates otherwise. The Court takes judicial notice of that exhibit, a copy of District Judge Weinstein's July 27, 1978 order entering judgment, and concludes that Fatico did in fact plead guilty to the conspiracy count set forth in full below.

2. COUNT THREE
   On or about the 4th day of February, 1971, within the Eastern District of New York, the defendant JAMES SANTAMARIA, the defendant JOHN RIPOLL, the defendant DANNY FATICO, also known as "Danny Wagons", the defendant CARMINE FATICO, also known as "Charlie Wagons", together with others not named herein, did knowingly and wilfully conspire to commit an offense against the United States, in violation of Title 18, United States Code, Section 659, by conspiring to possess a quantity of furs, having a value in excess of One Hundred Dollars ($100.00), which were stolen while moving in foreign commerce, the defendants knowing the same to be stolen. (Title 18, United States Code, Section 371).
   In furtherance of the said unlawful conspiracy and for the purpose of effecting the objectives thereof, the defendants committed the following:
   OVERT ACTS

   1. The Grand Jury repeats and realleges the allegations contained in Count One and Count Two as if more fully set forth herein. [Counts one and two alleged that Ripoll and Santamaria actually hijacked the trucks and that the Fatico brothers actually received the stolen goods.]
   2. On February 4, 1971, the defendant JAMES SANTAMARIA, the defendant JOHN RIPOLL, the defendant CARMINE FATICO, also known as "Charlie Wagons" met with the defendant DANNY FATICO, also known as "Danny Wagons", at the Bergen Hunt and Fish Club, Ozone Park, Queens, New York.

3. The trial court originally refused to allow an FBI agent to testify at Fatico's sentencing hearing as to unidentified informants' claims that Fatico was a member of the Gambino organized crime family. *Fatico*, 441 F.Supp. 1285 (E.D.N.Y.1977) (Fatico I). The Court of Appeals reversed, holding that when the Government has legitimate concerns for informants' safety, the sentencing court must permit law enforcement officers to summarize their information if it is corroborated. *U.S. v. Fatico*, 579 F.2d 707 (2d Cir.1978). Upon remand, the trial court found Fatico was a member of the Gambino family by clear, unequivocal and convincing evidence after testimony by numerous law enforcement officers related information from some 17 unidentified informants. *U.S. v. Fatico*, 458 F.Supp. 388 (E.D.N.Y.1978) (Fatico II). The Court of Appeals affirmed. *U.S. v. Fatico*, 603 F.2d 1053 (2d Cir.1979).

On July 27, 1978, the United States District Court for the Eastern District of New York sentenced petitioner to a four-year term on the conspiracy count, to be served consecutively with a three-year term imposed a month earlier for an unrelated gambling conviction. *Fatico II,* 458 F.Supp. at 412–13. This sentence was based, in part, on the Court's finding that Fatico was an active member of an organized crime family. *Id.* Petitioner began serving these terms on December 15, 1980.

On October 29, 1981, Fatico had his initial parole eligibility hearing before the United States Parole Commission. At that hearing, he received a salient factor score of six.[4] The Hearing Examiner Panel rated the severity of Fatico's offense behavior as Greatest I,[5] over Fatico's protest that he had only pleaded guilty to a single count of conspiracy to possess stolen goods, because of its finding that the offense involved multiple separate conspiracies related to the truck hijackings,[6] in addition to the unrelated gambling activity. Applying the Commission's parole guidelines,[7] the Panel found petitioner should serve 52 to 64 months of his aggregated seven-year sentence before parole, with presumptive parole after 52 months if his good adjustment to the institution continued.

On November 19, 1981, the Commission issued a Notice of Action ordering the petitioner's continued incarceration with presumptive parole on April 15, 1985, after 52 months of service. As reasons for the continuance, the order stated, "You participated in a conspiracy to commit armed hijacking of four freight trucks and 'fencing' of the stolen merchandise. You also participated in the operation of an illegal gambling operation which had approximately $2,000 per day profit."

Petitioner appealed the panel's order to the regional office of the Commission, contending that his offense severity rating was based on erroneous information and that the Commission did not follow proper procedure in deciding his case. The Regional Commissioner affirmed the panel's decision, citing the reasons the panel had previously stated. Petitioner then appealed to the National Appeals Board, which also affirmed the panel's original decision for an almost identical list of reasons.[8]

---

4. The salient factor score is designed to be an objective measure of the potential risk that a parole candidate will violate the conditions of his or her parole. The "salient factors" considered include prior convictions, prior commitments, age at current offense, recent commitment-free period, parole/probation/confinement/escape status at time of present offense and history of heroin or opiate addiction.

5. The offense severity rating matches the objective characteristics of the parole candidate's offense behavior with general descriptions of various offenses which are grouped according to perceived seriousness. Taken together, the salient factor score and the offense severity rating make up guidelines for parole release consideration and lead to the setting of a presumptive parole date.

6. The panel stated, "File material indicates that the offense behavior involved the subject's participation in a conspiracy to commit armed hi-jacking (sic) of four freight trucks and 'fencing' of the stolen merchandise." The file material referred to in the panel's report apparently was Fatico's presentence report on the conspiracy conviction. The testimony of informants Montello and Llauget implicating Fatico in four 1971 truck hijackings was summarized in that report, although Fatico was alleged to have received stolen goods from only three of those hijackings, the conduct for which he was actually indicted.

7. The guidelines are contained in 28 C.F.R. § 2.20 (1982).

8. The National Appeals Board stated,
Your offense behavior has been rated as Greatest I severity because of multiple separate offenses. You participated in a conspiracy to commit armed hijacking of four freight trucks and "fencing" of the stolen merchandise, with the driver being taken and released unharmed. You also participated in the operation of an illegal gambling operation (crap games) in which gross revenue was in excess of $2,000 per day profit. You have a salient factor score of 6. You have been in custody a total of 16 months. Guidelines established by the Commission for Adult cases which consider the above factors indicate a range of 52–64 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.

Having exhausted his administrative remedies, Fatico seeks relief in this Court. He claims that the Commission violated his right to due process in three ways:

(1) its consideration of *ex parte* information from his presentence report, information which the sentencing district court had found unreliable;

(2) its finding that he participated in a conspiracy to commit armed robbery of four freight trucks, a finding not supported by credible evidence in the record;

(3) its arbitrary and capricious categorization of his offense behavior severity as Greatest I.

In this Court's April 29, 1983 Order to Show Cause, the Court rejected Fatico's claim that the Commission's consideration of allegedly inaccurate information in his presentence report violated due process, finding that the Commission has the broadest latitude, and indeed responsibility, to consider information from all sources in making its decision, so long as the inmate may dispute the information. *Solomon v. Elsea,* 676 F.2d 282, 287–89 (7th Cir.1982); *Bush v. Kerr,* 554 F.Supp. 726, 730–31 (W.D. Wis.1982). *See generally,* 18 U.S.C. § 4207 (1976); 28 C.F.R. § 2.19(a) (1982). Consequently, this memorandum and order deals only with petitioner's contention that the record does not support the Commission's factual findings and that the Commission abused its discretion in classifying petitioner's offense severity as Greatest I based on those findings.

## II. *The Merits of Fatico's Petition*

The crux of Fatico's request for relief is his contention that the factual findings of the Commission's Hearing Examiner Panel with regard to his offense behavior are incorrect and the product of unreliable information. Specifically, he urges that his plea of guilty to the charge of conspiracy to possess the stolen furs itself in no way implicates him in "armed hijacking of four freight trucks and 'fencing' of the stolen

merchandise," the offense behavior found by the panel. Rather, he argues, the panel improperly based its findings on independent indictments which had been dismissed by the Court and from his presentence report on the conspiracy conviction. Fatico infers that information from these sources is insufficient to support the Commission's factual findings because it is based on the uncorroborated testimony of government informants Montello and Llauget, testimony which the sentencing court allegedly found unreliable.

■ A prospective parolee's right to due process would be violated if the Commission made a parole decision based on information which was obviously false or of such an untrustworthy nature that no reasonable factfinder would rely on it. *Majchszak v. Ralston,* 454 F.Supp. 1137 (W.D.Wis.1978) (constitutionally defective, uncounseled juvenile convictions cannot be relied upon by the Commission in making parole decisions). *Cf. Evans v. Dillahunty,* 662 F.2d 522, 526 (8th Cir.1981) (parole officials' failure to allow parole candidate to rebut false statements by prosecutor violated due process). When a parole candidate's complaint falls short of clearly establishing that the information in question should not have been relied upon by the Commission, however, a reviewing court may only consider whether the parole candidate has been accorded, "the combination of the procedures sufficient to minimize risks that a decision will be based on incorrect information." *Walker v. Prisoner Review Board,* 694 F.2d 499, 505 (7th Cir.1982).

The Court of Appeals has held that a parole candidate's participation in the parole fact-finding process—the rights to reasonable access to adverse information, to present and respond to evidence presented at the parole hearing, and to representation [9]—along with the Commission's obligation to resolve contested facts by a preponderance of the evidence,[10] adequately guarantees that the parole decision will be based

---

**9.** 18 U.S.C. §§ 4207, 4208 (1976).

**10.** 28 C.F.R. § 2.19(c) (1982).

on accurate facts. *Solomon v. Elsea,* 676 F.2d 282, 288 (7th Cir.1982).

■ If the Commission has met these procedural requirements and the parole candidate still maintains that the Commission's decision was based on false information, a reviewing court, "need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons [for making the contested decision]. The inquiry is not whether the Commission's decision is supported by a preponderance of the evidence or even by substantial evidence." *Id.* at 290. *See e.g., Cox v. Benson,* 548 F.2d 186 (7th Cir.1977) (remand required because record devoid of facts supporting Commission's factual findings about parole candidate's offense behavior). The Court of Appeals specifically rejected a "sufficiency of the evidence" standard, which would allow a court reviewing Commission findings to reweigh the evidence. *Solomon,* 676 F.2d at 290. *Contra Hearn v. Nelson,* 496 F.Supp. 1111, 1115 (D.Conn.1980) (court issued writ of habeas corpus in part because of Commission's apparent failure to consider information favorable to the candidate).

Turning to the immediate case, petitioner Fatico has offered no conclusive proof that the information relied on by the Commission in making its factual findings is false. Nor does he allege the Commission denied him the opportunity to participate in the fact-finding process. Indeed, the hearing summary reveals that Fatico, assisted by his attorney, took an active role in contesting the information contained in his presentence report about the extent of his participation in both the truck hijackings and the gambling operation.[11] Fatico is merely reiterating the position he took before the Commission—that the information from the informants Montello and Llauget about his

participation in the truck hijackings is false and unreliable—in a new forum.

■ Accordingly, the Court need only decide whether the information relied on by the Commission is so unreliable as to preclude it from being a sufficient factual basis for the Commission's findings. To frame the question more specifically, the Court must decide whether a reasonable factfinder, weighing all the information before it, *could* find by a preponderance of the evidence that Fatico participated in a conspiracy to commit armed hijackings of four freight trucks and "fencing" of the stolen merchandise.

Fatico correctly states that, "an allegation that is vague, unsupported, or comes from an unreliable source should not be considered" by the Commission in rating the severity of a parole candidate's offense behavior. Petitioner's memorandum in support of petition for habeas corpus at 7, *quoting U.S. Parole Commission Procedures Manual* at 82 (1980). He then argues that information implicating him in the four truck hijackings comes from such an "unreliable source," the informants Montello and Llauget, and must be found insufficient as a matter of law to support the commission's findings.

He quotes District Judge Weinstein:

They [Montello and Llauget] had also been called as key witnesses in prior cases tried by the court where, after devastating attacks on their credibility, the juries had failed to convict. Both men have extensive criminal records running back over more than 20 years ... Llauget's record includes a conviction for murdering his wife.

\* \* \* \* \* \*

Montello and Llauget are hardly model witnesses. They have extensive criminal

---

11. The panel stated,

Prisoner contests the description of the offense behavior, saying that he had a deal with the U.S. Attorney and plead guilt to only one count of the indictment and that was for conspiracy to possess stolen goods valued in excess of $100.00 ... The attorney made a very good and dramatic statement emphasiz-

ing that the subject was in no way guilty participating in any hi-jacking (sic) of any trucks or merchandise. He agrees that he plead guilty to a reduced charge as [part of] an agreement [so] that his brother [who] was suffering from cancer, would not be committed.

records, long histories of association with organized crime, and for some years they have been supported by the Government in its witness protection program. All of this leaves their credibility in doubt.

Petitioner's memorandum in support of petition for habeas corpus at 8, 9, *quoting Fatico II,* 458 F.Supp. at 394, 412.

Petitioner goes too far in urging this Court to rule that the Commission erred in basing its findings on information supplied by Montello and Llauget. Fatico cites no authority, and the Court is aware of none, suggesting that a sentencing judge's comments on the credibility of certain witnesses undermines the ability of the Commission to weigh their testimony itself. This does not mean that the sentencing judge's comments are valueless. They do tend to support Fatico's contention that the Commission's findings were without sufficient factual basis. As it happens, however, they do not convince this Court of that conclusion for several reasons.

First, it is plausible that the character of the fact to be proved before Judge Weinstein may have influenced his measure of the informants' credibility. The Judge's comments were made in the context of a sentencing hearing to determine whether Fatico was a "made" member of an organized crime family. Members of organized crime families cannot be expected to carry membership cards or wear uniforms; therefore, in all probability Montello and Llauget's testimony on Fatico's membership in a crime family was far less tangible than their testimony regarding the truck hijacking. They were not, after all, "family" members themselves. *Fatico II,* 458 F.Supp. at 394, 412.

Second and perhaps most important, Judge Weinstein applied the "clear, unequivocal and convincing" standard to proof of Fatico's status as a "made" member of the Gambino crime family. *Id.* at 408. The Government may have been unable to meet this high burden of proof regarding Fatico's "made" status, almost solely on the basis of the informants' testimony. That fact does not necessarily preclude the commission

from finding, by only a preponderance of the evidence, that Fatico was involved in the hijackings on the basis of the informants' testimony.

Finally, Fatico's trial on one of the hijacking indictments ended in a hung jury, rather than in an acquittal. *Id.* at 391. Despite "devastating attacks on their [the informants] credibility," at least some jurors were convinced "beyond a reasonable doubt" of Fatico's guilt by their testimony; Montello and Llauget must not have been totally incredible.

Judge Weinstein was undoubtedly astute in his judgment that Montello and Llauget were "hardly model witnesses," but his comments fail as proof that the Commission could not have found, by a preponderance of the evidence, that Fatico participated in a conspiracy to commit armed hijackings of four freight trucks and "fencing" of the stolen merchandise. This Court concludes the Commission had a sufficient factual basis for its findings about Fatico's offense behavior.

■ Having found no fault with the Commission's factual findings, the Court concludes Fatico's claim that the Commission acted arbitrarily and capriciously in rating the severity of his offense behavior as Greatest I is meritless. Listed as an example in the "Greatest I" category of the *Adult Guidelines for Parole Decisionmaking* is the following offense description: "Kidnapping [other than that listed in Greatest II; limited duration; and no harm to victim (e.g. kidnapping the driver of a truck during a hijacking, driving him to a secluded location, and releasing victim unharmed) ]." 28 C.F.R. § 2.20 (1982).

From that description of a Greatest I offense, a finding the Fatico had participated in a single armed hijacking would support his Greatest I rating; in actuality, the panel found Fatico had participated in four armed hijackings. The Commission acted within its discretion under these circumstances in rating Fatico's offense severity as Greatest I. *Young v. U.S. Parole Commission,* 682

F.2d 1105, 1108 (5th Cir.1982) (court will not disturb offense severity rating unless Commission's rating was flagrantly unwarranted or unauthorized).

Accordingly,

### ORDER

IT IS ORDERED that petitioner's request for a writ of habeas corpus is DENIED.