**Clarence W. WALKER, Plaintiff,**

v.

**PRISONER REVIEW BOARD, James R. Irving, Chairman, Defendant.**

**No. 79 C 0623.**

United States District Court, N.D. Illinois, E.D.

Sept. 27, 1984.

Clarence W. Walker, pro se.

Thomas F. Geraghty, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff.

Terrence Madsen, Mark Rotert, Asst. Attys. Gen., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Clarence Walker ("Walker"), an inmate of the Illinois State Penitentiary at Stateville, Joliet, Illinois, brought this action challenging his denial of parole release by the Illinois Prisoner Review Board ("the Board"). In 1979, the Board moved for and was granted dismissal by this Court. The Court decided that since the Board had followed certain procedures considered adequate in *Greenholtz v. Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), denial to Walker of access to his file was not a denial of due process, and further, that the Board's statement of reasons for denying Walker parole was sufficient. The Seventh Circuit Court of Appeals held that inmates of Illinois penal institutions do have a justified expectation of access to their parole files because Rule IV–C of the Rules Governing Parole, Ill.Reg., vol. II, no. 44 at 20 (1978), mandates such access, and that such access is "precisely an element of due process." *Walker v. Prisoner Review Board*, 694 F.2d 499, 503 (7th Cir.1982). The case was remanded to this Court to determine the merits of Walker's claim. Walker has since amended his complaint and is now seeking declaratory judgment, damages

and federal habeas corpus relief for the deprivation of his due process rights.[1] Presently before the Court are the parties' cross-motions for summary judgment.[2] For the reasons set forth below, Walker's motion is granted in part and denied in part, and the Board's motion for summary judgment is granted.

### A.

■ Walker first contends that the Board violated his Fourteenth Amendment due process rights when it denied him access to his parole file. He is entitled to summary judgment as to this issue. Walker was not permitted to see his file even though he had a "justified expectation of access" to it, *Walker*, 694 F.2d at 503, under Rule IV–C of the Rules Governing Parole.[3] The Seventh Circuit found the "language of the Rule [to be] clear, mandatory, and without qualification ... [and to specify] precisely an element of due process." *Id.* Accordingly, Walker is entitled to a declaration that his due process rights were violated when he was denied access to his parole file.[4]

### B.

■ Walker argues next that the Board's consideration of four newspaper

articles in his parole file was an abuse of the Board's discretion to consider evidence it believes to be relevant to the parole release decision. Walker contends that the newspaper articles contain hearsay and that any parole decision based upon such unreliable information violates his due process rights. In support of his contentions, Walker cites *Fatico v. Kerr*, 569 F.Supp. 448, 451 (W.D.Wis.1983). However, in *Fatico* the court explained that a parolee's complaint must clearly establish that the erroneous information was in fact relied upon; otherwise, the reviewing court may only consider whether the parole candidate was accorded the "combination of the procedures sufficient to minimize risks that a decision [was] based on incorrect information." *Walker*, 694 F.2d at 505. In the present case, it has not been established that the Board relied upon the newspaper articles. To the contrary, the Board's statement of reasons underlying its decision to deny parole makes no reference to the articles; rather, it sets forth completely independent bases for its decision which the Court of Appeals has already determined to be constitutionally sufficient. *Id.* at 502.[5]

■ Even if this Court were to assume that the Board considered the newspaper

1. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1343(3), 2201, 2202 and 2241 *et seq.*

2. On a motion for summary judgment, of course, the moving party has the burden of clearly establishing that "there is no genuine issue as to any material fact and [therefore he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

3. Rule IV–C provides:
   Records Access:
   A parole candidate shall have access to all documents which the Board considers in denying parole or setting a release date. If such documents have not been disclosed to the candidate before the interview, they shall be disclosed to him during the interview. If, in light of the documents, the candidate so desires, he shall be granted a 30-day continuance.
   Rule IV–C was enacted as an Emergency Rule on October 25, 1978, and has continued in effect since.

4. The Board's arguments to the contrary are without merit. First, the Board suggests that

Walker was denied access to his parole file only *before* Rule IV–C became effective. This suggestion is not supported by the allegations in Walker's complaint and affidavit, and is no more persuasive now than when the Seventh Circuit rejected it. *Walker*, 694 F.2d at 504. Second, the distinction between Walker's parole file and his master file does not help the Board. Rule IV–C contains no such distinction; rather, it requires disclosure of *all* documents considered by the Board in making a parole decision. The master file is among the many documents which the Board may consider. Ill.Rev.Stat. ch. 38, § 1003–3–4(c) (1984). Walker was repeatedly denied access to both his parole file and his master file until July 20, 1983.

5. The Seventh Circuit's determination in *Walker* is consistent with the finding in a similar case, *Solomon v. Elsea*, 676 F.2d 282 (7th Cir.1982). In *Solomon*, an inmate contended that the U.S. Parole Commission's reliance upon factually incorrect information when making his parole release decision tainted the entire parole determination process. Solomon identified four specific errors contained in his presentence report

articles, Walker was not deprived of his due process rights. The Board has been granted wide discretion to review material which would aid it in the parole release decision, including summaries of the interview, of the prospective parolee's institutional records, and of pre-confinement and post-confinement reports. Ill.Rev.Stat. ch. 38, §§ 1003–3–4 and 1003–3–5(b) (1984). In fact, the Board may consider such documents "despite the knowledge that there are no formal limitations that they might rest on hearsay, and that they might contain certain information bearing no relation whatsoever to the crime with which the defendant is charged." *Solomon v. Elsea,* 676 F.2d 282, 288 (7th Cir.1982), quoting *Gregg v. United States,* 394 U.S. 489, 492, 92 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969) (presentence report). As the court in *Fatico* noted, a parole board "has the broadest latitude, and indeed responsibility, to consider information from all sources in making its decision, so long as the inmate may dispute the information." *Fatico,* 569 F.Supp. at 451.

The Board's decision to grant or to deny parole is not without limits. In *Greenholtz v. Nebraska Penal and Correctional Complex,* 442 U.S. 1, 16, 99 S.Ct. 2100, 2108, 60 L.Ed.2d 668 (1979), the Supreme Court defined the minimum requirements of procedural due process which would attach if a state had statutorily created a protectible expectancy of release. The Court found that the "Nebraska procedure afford[ed] an opportunity to be heard, and ... [upon denial] ... inform[ed] the inmate in what respect he [fell] short of qualifying for

parole.... The Constitution does not require more." *Id., 422* U.S. at 16, 99 S.Ct. at 2108.[6]

██ Like Nebraska, Illinois has statutorily created a protectible expectancy of release. *See U.S. ex rel. Scott v. Illinois Pardon and Parole Board,* 669 F.2d 1185, 1190 (7th Cir.1982). Illinois' statutory provisions fulfill the minimum requirements of due process defined in *Greenholtz;* a prospective parolee must be interviewed by at least one member of the Board, and the Board must inform the prospective parolee of the basis of its decision in writing, within a reasonable time. Ill.Rev.Stat. ch. 38, §§ 1003–3–5(b), (f) (1984). In addition, Illinois inmates must be given access to their parole files. *Walker,* 694 F.2d at 503. Because the Board must consider materials submitted to it by the inmate, Ill.Rev.Stat. ch. 38, § 1003–3–4(d)(6), the prospective parolee's due process rights are adequately safeguarded. The inmate is given access to all the information before the Board, as well as an opportunity to respond to or rebut any adverse information. Accordingly, Walker is not entitled to have the newspaper articles expunged from his file.

In the present case, Walker has been given the opportunity to be heard at every hearing, and the Board has provided him with a statement of reasons each time it has denied him parole. However, Walker was not allowed to see his file until July 20, 1983, so he may have been unable to adequately answer or refute any adverse information contained in the file.[7] If Walker

to support this contention. The Court found that since none of the alleged errors entered into the Commissioner's decision, the merits of Solomon's claims were not the proper subject of the Court's review. *Id.* at 289.

**6.** Contrary to Walker's assertions, parole release determinations are not analogous to parole revocation proceedings; the same standards of due process do not apply to both situations. Walker maintains that the same interest, *i.e.,* conditional liberty, is at stake in both the revocation and the release decisions. A similar argument was made by the inmates in *Greenholtz* and rejected by the Supreme Court. The Court recognized the crucial distinction between re-

lease and revocation, namely, the difference between "being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz,* 442 U.S. at 9, 99 S.Ct. at 2105. The parole release decision itself is a subtle inquiry involving both factual and subjective appraisals, and "[p]rocedures designed to elicit specific facts, such as those required in [revocation cases] are not necessarily appropriate to a ... parole determination." *Id.,* 442 U.S. at 14, 99 S.Ct. at 2107.

**7.** It is unclear from the record in the case precisely how many hearings Walker has had. There are references in the complaint and supporting affidavits to at least four hearings, all

**560**

has not yet had an opportunity to respond to and rebut the information in the file following its disclosure to him, due process dictates that he be given that opportunity. See Ill.Rev.Stat. ch. 38, §§ 1003–3–4(d)(6) and 1003–3–5(b) (1984). Thus, Walker is not entitled to summary judgment on his claim that the Board violated his due process rights by including the newspaper articles in his parole file.

### C.

The Board has filed a motion for summary judgment concerning two issues. The Board first maintains that it has an obligation to review all relevant material brought to its attention in a parole release determination, and thus it was proper for Walker's file to contain the newspaper articles. This assertion was discussed in section B in the context of Walker's motion for summary judgment, and for the reasons stated above, the Board's motion is granted.

The Board also maintains that James Irving is immune from a damages action by Walker for any violation of his due process rights.[8] The Board argues that "Illinois Prisoner Review Board officials are absolutely immune from suit under 42 U.S.C. § 1983 for their official activities in processing parole applications." Trotter v. Klincar, 566 F.Supp. 1059, 1063 (N.D.Ill. 1983); see United States v. Irving, 684 F.2d 494 (7th Cir.1982). Walker argues that since Rule IV–C of the Rules Governing Parole is "clear, mandatory, and without qualification," Walker, 694 F.2d at 503, the Board members acted in a ministerial rather than adjudicatory capacity, and therefore should not be immune from damages. Walker claims that the Board's ac-

tion is indistinguishable from the magistrate's decision concerning the location of a probation hearing which was held to be ministerial rather than adjudicatory in Harris v. Powers, 520 F.Supp. 111 (W.D.Wis. 1981).

 In fact, Walker's reliance on Harris is misplaced. Harris did not involve a challenge to the ultimate decision to revoke, but rather was a narrow inquiry in a decision made without the context of an adjudicatory proceeding. Harris, 520 F.Supp. at 117. Within the context of an adjudicatory proceeding parole officials enjoy absolute immunity for official actions. This Court has not recognized any distinction between ministerial and adjudicatory functions, and the Seventh Circuit has "expressly declined to adopt it, observing that '[i]t appears that all tasks of Illinois Prisoner Review Board members relate to their adjudicatory function." Trotter, 566 F.Supp. at 1063, quoting United States v. Irving, 684 F.2d at 497 n. 4 (7th Cir.1982)." Therefore, Irving is immune from damages. Accordingly, the defendant's motion for summary judgment on the issue of James Irving's immunity from a damage award is granted.[9]

Accordingly, Walker's motion for summary judgment is granted in part and denied in part; the Board's motion for summary judgment is granted. It is so ordered.

---

before July 20, 1983, the date on which Walker was first provided with access to his file. In addition, there is a written record of three other hearings transcribed by Walker's counsel from tape recordings of Walker's hearings. One of these is dated August 3, 1983, after Walker gained access to his file.

**8.** Walker concedes that the Illinois Prisoner Review Board is immune from a damages award under Eleventh Amendment principles.

**9.** In addition to a declaratory judgment and money damages, Walker seeks habeas corpus

relief. However, it is unclear whether Walker is entitled to this relief. If Walker already has had a parole hearing since he was given access to his file, habeas relief is not available to him. On the other hand, if Walker has not yet had such a hearing, this Court hereby orders the Board to provide him with one within thirty days. In the case of non-compliance with the Court's order, the writ of habeas corpus will be granted. See, e.g., Billiteri v. United States Board of Parole, 541 F.2d 938, 944 (2d Cir.1976).