**Clarence W. WALKER,
Plaintiff-Appellant,**

**v.**

**PRISONER REVIEW BOARD, James
R. Irving, Chairman,
Defendants-Appellees.**

No. 84–2818.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1985.

Decided July 26, 1985.

Vladimir Tastevich, Chicago, Ill., for plaintiff-appellant.

Scott Graham, Ill. Atty. General's Office, Chicago, Ill., for defendants-appellees.

Before BAUER, POSNER, Circuit Judges, and MORTON, Senior District Judge.*

BAUER, Circuit Judge.

Plaintiff Clarence W. Walker is an Illinois prisoner who was denied access to his parole file by the Illinois Prisoner Review Board. He filed an action under 42 U.S.C. § 1983 against the Illinois Prisoner Review Board and its chairman. The district court found that the denial of access to his parole file violated plaintiff's due process rights. Plaintiff appeals the district court's further rulings that the Illinois Prisoner Review Board and its chairman are immune from damages for this constitutional violation and that the presence of certain newspaper articles in plaintiff's parole file is not in violation of the due process clause of the fourteenth amendment. We affirm the judgment of the district court.

## I

Plaintiff is an inmate in an Illinois prison serving consecutive prison terms of 100 to 150 years for rape, 100 to 150 years for armed robbery, and 19 to 20 years for attempted murder. The Illinois Prisoner Review Board (the Board) had denied plaintiff's application for parole on several occasions prior to February 16, 1979, when he filed a Section 1983 action against the Board and its chairman because he was denied access to certain documents in his parole file. The district court dismissed the claim, but on appeal this court held that the denial of access to his parole file violated the command of Rule IV(C) of Illinois' Rules Governing Parole[1] that "[a] parole candidate shall have access to all documents which the Board considers in denying parole." *Walker v. Prisoner Review Board*, 694 F.2d 499, 503 (7th Cir.1982). This court further held that such access was an element of due process, *id.* at 503, and accordingly remanded the case to the district court to determine whether the

Board considered documents to which plaintiff was denied access. *Id.* at 505.

On remand, plaintiff amended his complaint to allege that his due process rights were violated by the presence of four newspaper articles in his parole file and to request an award for damages from the Board and its chairman. The newspaper articles, which plaintiff had discovered after being allowed access to his parole file, reported information which purportedly linked plaintiff to between eighteen and twenty-six slayings similar to the crime of which plaintiff was convicted.

The district court held on remand that the Prisoner Review Board violated plaintiff's due process rights by previously denying him access to his parole file, but that the Board and its chairman were immune from damages for that violation. *Walker v. Prisoner Review Board*, 594 F.Supp. 556, 560 (N.D.Ill.1984). The district court further held that the presence of the newspaper articles in plaintiff's parole file did not violate his due process rights. 594 F.Supp. at 559. This holding was based on the district court's finding that the Board did not rely on the articles in deciding to deny plaintiff parole and upon the reasoning that, even if the Board did consider the articles, it was within the Board's discretion to do so. *Id.* at 558–59. Plaintiff now appeals the district court's holdings that the Board members are immune from suit for damages and that the presence of the newspaper articles in his parole file does not violate due process.

## II

■ Plaintiff argues that the Board members are not immune from damages for denying him access to his parole file because this action was not adjudicatory in nature, and the Board members' immunity extends only to actions taken in the course of the Board's adjudicatory function. In support of this argument, plaintiff relies primarily on the Third Circuit's decision in

---

* The Honorable L. Clure Morton, Senior Judge of the United States District Court for the Middle District of Tennessee, is sitting by designation.

1. Codified at 20 Ill.Adm.Code § 1610.40 (1983).

*Thompson v. Burke,* 556 F.2d 231 (3d Cir. 1977), which drew a distinction between adjudicatory acts, for which a parole board member is absolutely immune from damages, and ministerial or non-adjudicatory acts, for which a parole board member receives only qualified immunity. 556 F.2d at 240. This distinction, however, has not been adopted by this circuit, and we affirm the district court's ruling that parole board members are absolutely immune from damages when acting in the course of their duties as parole board members.

The United States Supreme Court has established a "functional comparability" test to determine whether executive officials who act in an adjudicatory capacity for an administrative agency are entitled to the absolute immunity from suit afforded to the judiciary. *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978); *Trotter v. Klincar,* 748 F.2d 1177, 1182 (7th Cir.1984). Under this test, a court must determine whether the "administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Butz,* 438 U.S. at 512–13, 98 S.Ct. at 2914. The Supreme Court has expressly reserved the "question of what immunity, if any, a state parole officer has in a § 1983 action," *Martinez v. California,* 444 U.S. 277, 285 n. 11, 100 S.Ct. 553, 559 n. 11, 62 L.Ed.2d 481 (1980), but this circuit has held that the Illinois Prisoner Review Board is functionally comparable to the judiciary and that therefore its members are entitled to absolute immunity for their official actions. *Trotter v. Klincar,* 748 F.2d at 1182 (challenged actions related to parole revocation); *United States* ex rel. *Powell v. Irving,* 684 F.2d 494, 496 (7th Cir.1982) (challenged actions related to denial of parole).

This circuit also has declined to accept a distinction between adjudicatory actions by Board members, which receive absolute immunity, and administrative actions, which, as plaintiff argues, should receive only qualified immunity. In *Powell* we noted that such a distinction between a parole board's functions had been made by the Third Circuit in *Thompson v. Burke,* 556 F.2d 231 (3d Cir.1977), but we stated that "[i]t appears that all the tasks of Illinois Prisoner Review Board members relate to their adjudicatory function." *Powell,* 684 F.2d at 497 n. 4. Similarly, in *Trotter* we stated that the Board members' actions which are functionally comparable to those of the judiciary "include not only the actual decision to revoke parole, but also the activities that are part and parcel of the decision process." *Trotter,* 748 F.2d at 1182.[2] Accordingly, we are not persuaded that the distinction between adjudicatory and administrative actions which plaintiff urges us to make is desirable or even possible.

Plaintiff relies heavily on *Harris v. Powers,* 520 F.Supp. 111 (W.D.Wis.1981), which applied the adjudicatory/administrative dichotomy to the Wisconsin parole board's decision regarding the location of a revocation hearing. The district court held that this decision was not adjudicatory in nature and that therefore the parole officer was entitled only to qualified immunity for his actions. *Harris,* 520 F.Supp. at 115–16. As we noted in *Trotter,* our subsequent decision in *Powell* "casts doubt on the continued validity of the holding in *Harris.*" *Trotter,* 748 F.2d at 1182 n. 4. For the reasons stated in this opinion, we remove any doubt about the holding in *Harris* by declaring that its acceptance of only qualified immunity for "administrative" acts of parole board members no longer has any validity in this circuit.

In *Powell* we held that Board members were entitled to absolute immunity from Section 1983 suits "for their official activi-

---

**2.** Although *Trotter* involved parole revocation as opposed to the denial of an application for parole considered in *Powell,* we stated in *Trotter* that "parole officials who decide parole applications are indistinguishable from parole officials who conduct preliminary and final parole revocation hearings." *Trotter,* 748 F.2d at 1181 (quoting *Trotter v. Klincar,* 566 F.Supp. 1059, 1063 (N.D.Ill.1983)).

ties in processing parole applications." 684 F.2d at 495. This standard encompasses all actions taken by Board members in the course of their official duties, whether or not they may be classified as adjudicatory or administrative, and is consistent with the rationale underlying the doctrine of absolute immunity discussed at length in *Butz,* 438 U.S. at 508–17, 98 S.Ct. at 2911–16, and *Powell,* 684 F.2d at 495–97. The burden placed on Board members would be heavy even if they were exposed to liability only for "administrative" actions. Furthermore, it is not clear that a dichotomy of "adjudicatory" and "administrative" actions realistically could be made. Even assuming such a distinction is possible, the line of division between "administrative" and "adjudicatory" acts might only be delineated through burdensome litigation which would unduly disrupt the Board's functions. Moreover, we noted in *Powell* that safeguards apart from Section 1983 suits for damages, including review of parole denials through petitions for writ of habeas corpus, "adequately guard prisoners' parole rights without impairing the performance of Board members." 684 F.2d at 497. We therefore reject plaintiff's argument that the holding in *Powell* extends only to adjudicatory and not administrative actions by Board members. *Accord Anderson v. Boyd,* 714 F.2d 906, 908–09 (9th Cir.1983).

■ It is clear that the Board's decision to deny plaintiff access to his parole file was an official action made in the course of processing plaintiff's parole application. Therefore, the Board members are absolutely immune from suit for this decision, and we affirm the ruling of the district court so holding.

### III

Although the defendants in this case are immune from suit for damages, plaintiff is not precluded from obtaining injunctive or declaratory relief for unconstitutional actions by the Board. *See United States* ex

rel. *Powell v. Irving,* 684 F.2d 494, 497–98 (7th Cir.1982); *Hansen v. Ahlgrimm,* 520 F.2d 768, 769 (7th Cir.1975). Therefore, we now consider plaintiff's claims that the Board violated his due process rights by considering four newspaper articles which are included in plaintiff's parole file in denying his parole application and that the presence of these articles in his file similarly is unconstitutional because the Board could not properly consider the articles in making its parole determination. We reject both claims.

Plaintiff first argues that, by considering the newspaper articles in his parole file, the Board denied his parole application based on unverified information, thereby violating his due process rights. We need not reach the legal sufficiency of this argument because it has not been shown that the Board actually did consider the newspaper articles in plaintiff's parole file in making its decision to deny him parole. Our review is limited to "the facts which constitute significant factors in the [Parole] Commission's decision." *Solomon v. Elsea,* 676 F.2d 282, 289 (7th Cir.1982). Plaintiff merely concludes that the articles "are so highly inflammatory that they must have been viewed and considered by the Board." Reply Br. at 1. It is evident, however, that the Board denied plaintiff parole based on "the particularly violent and brutal" nature of the crimes of which he was convicted and the fact that while in prison plaintiff had at last count accumulated seventy-five violation reports, several of which involved serious misconduct and resulted in the loss of good time and a demotion in his prisoner status. No mention was made of the newspaper articles or any other crimes which plaintiff may have committed, and plaintiff does not argue that the reasons which the Board relied upon were insufficient or improper. We therefore affirm the district court's holding that the Board properly relied upon the grounds set forth in the Illinois parole statute in denying plaintiff parole.[3]

---

**3.** The Illinois parole release statute states:

The Board shall not parole a person eligible for parole if it determines that:

**400**

Plaintiff argues that even if the Board did not consider the newspaper articles in making its determination, their mere presence in his parole file violates due process. Plaintiff relies primarily on the Supreme Court's statement in *Greenholz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), that "[t]he function of legal process ... is to minimize the risk of erroneous decisions." 442 U.S. at 13, 99 S.Ct. at 2106. Plaintiff argues that the unverified and "highly inflammatory" allegations in the newspaper articles create a high risk that the Board will base its parole application determination on incorrect information, thereby violating plaintiff's due process rights. Therefore, plaintiff asserts that the presence of the articles in his parole file does not minimize the risk of erroneous decisions by the Board and is unconstitutional.

In *Greenholz* the Supreme Court held that there is no constitutional right to parole. 442 U.S. at 7, 99 S.Ct. at 2103. The Court further stated, however, that by establishing a parole system, a state may create an expectation for inmates of release on parole which is entitled to some due process protection. 442 U.S. at 12, 99 S.Ct. at 2106; *United States* ex rel. *Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1188 (7th Cir.1982). In *Scott,* this court interpreted Illinois' parole release statute and determined that under it "parole must be granted if none of the specified reasons for denial are found to exist." 669 F.2d at 1189. Following the Supreme Court's decision in *Greenholz,* we held that the Illinois statute therefore created a constitutionally protected expectation of release for prisoners eligible for parole. 669 F.2d at 1190. Thus, due process applies to the Board's decision to deny a prisoner parole.

(1) there is a substantial risk that he will not conform to reasonable conditions of parole; or
(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

In *Scott* we considered whether the reasons stated by the Board for denying an inmate parole were constitutionally sufficient. In making our determination, we held that due process requires only that the Board inform an inmate of what in his record the Board felt warranted denial of parole and why. 669 F.2d 1191. In reaching this conclusion we stated that

*Greenholz* makes clear that, even when the Due Process Clause applies to a parole release determination, there is "nothing in the due process concepts as they have thus far evolved that requires the Parole Board to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release."

669 F.2d 1190–91 (quoting *Greenholz,* 442 U.S. at 15, 99 S.Ct. at 2107).

Similarly, in *Solomon v. Elsea,* 676 F.2d 282 (7th Cir.1982), we held that due process is not violated when a parole board relies "on information that has not been proved in an adversary setting." 676 F.2d at 288. In *Solomon* we addressed a federal prisoner's due process claim that he was improperly denied parole based on erroneous information contained in his presentence investigation report. The federal parole statute considered in *Solomon* contains similar provisions to those of the Illinois statute which are pertinent to the issue in this case.

In addressing the prisoner's due process claim in *Solomon,* we noted that the type of information which the federal parole board was permitted to consider was "quite broad." 676 F.2d at 288. This is also true of the Illinois statute. *Accord Greenholz,* 442 U.S. at 8, 99 S.Ct. at 2104 ("the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority"). After enumerating certain informa-

(3) his release would have a substantially adverse effect on institutional discipline. 38 Ill.Rev.Stats. 1003-3-5 (1983).

tion and materials which the Board must consider in making its parole determination, Rule IV of the Board's rules permits the Board to "consider any other information in the file or submitted in support or opposition to parole by other persons." Rule IV(D)(3).[4] We further noted in *Solomon* that the federal parole board was permitted to consider information in the prisoner's presentence investigation report, "despite the knowledge that there are no formal limitations to their contents, that they might rest on hearsay, and that they may contain certain information bearing no relationship whatsoever to the crime with which the defendant is charged." 676 F.2d at 288 (citing *Gregg v. United States*, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969)). Illinois also allows its parole board to consider information contained in a prisoner's presentence investigation report. *See* Rule IV(D)(2)(a). We therefore find no support for plaintiff's argument that the Board may not consider the newspaper articles in his parole file because the facts or allegations contained in the articles have not been proved reliable.

*Solomon* acknowledged that "[i]n relying on information that has not been proved in an adversary setting, the [parole board] runs the risk of relying on inaccurate information." 676 F.2d at 288. We noted, however, that the federal parole statute applied in *Solomon* allowed the prisoner access to the materials used in making the parole determination and afforded the prisoner an opportunity to respond to the information which the parole board considers. *Id.* The Illinois statute also provides a prisoner with these safeguards. *See* Rule IV(B), (C), and (D). Although the Illinois statute does not provide a parole applicant with the further protection of a right to counsel and does not require the Board to resolve any disputes as to facts under a preponderance of the evidence standard, as does the federal statute, we do not believe that Illinois' failure to offer the greater protection afforded a

prisoner by the federal statute violates due process.

In discussing the risk of erroneous decisions in *Greenholz*, the Supreme Court stated that

[b]ecause of the broad spectrum of concerns to which [due process] must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.

442 U.S. at 13, 99 S.Ct. at 2106 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). In the context of a parole application decision, which the Court noted "is necessarily subjective in part and predictive in part," 442 U.S. at 13, 99 S.Ct. at 2106, procedures designed to elicit specific facts "are not necessarily appropriate." *Id.* at 14, 99 S.Ct. at 2107. The Court further stated that the mere existence of a statutory expectation "cannot mean that in addition to the full panoply of due process required to convict and confine there must also be repeated adversary hearings in order to continue the confinement." *Id.* Rather, the Court held that when an inmate has an opportunity to review the material in his parole file and to demonstrate to the parole board that parole is appropriate in his case, "this procedure adequately safeguards against serious risks of error and thus satisfies due process." 442 U.S. at 15, 99 S.Ct. at 2108. The Illinois statute, which we held in *Scott* was the "mirror image" of the Nebraska statute considered in *Greenholz*, complies with due process in this respect, sufficiently protecting plaintiff from the risk that his parole determination will be based on erroneous information. We therefore hold that the presence of the newspaper articles in plaintiff's parole file does not violate due process and affirm the decision of the district court not to order

**4.** The Parole Board's rules are enacted pursuant to 38 Ill.Rev.Stats. ¶ 1003–3–2(d) and are codified at 20 Ill.Adm.Code § 1610.10 *et seq.* (1983).

removal of the articles from plaintiff's parole file.

AFFIRMED.