**Lonell MOSLEY, Plaintiff,**

v.

**Paul KLINCAR, et al., Defendants.**

**No. 88 C 7817.**

United States District Court, N.D. Illinois, E.D.

April 20, 1989.

Lonell Mosley, pro se.

Neil F. Hartigan, Atty. Gen. by Brian Donovan, Asst. Atty. Gen., Chicago, Ill., for defendant Klincar.

Richard M. Daley, State's Atty. of Cook County by Madeleine S. Murphy, Asst. State's Atty., Chicago, Ill., for defendants Daley and Arthur.

## ORDER

BUA, District Judge.

More than a decade after he received prison sentences for the offenses of mur-

der and attempted murder, plaintiff Lonell Mosley remains incarcerated at the Shawnee Correctional Center in Vienna, Illinois. Mosley has made several requests for parole, but to no avail. In 1988, after the Illinois Prisoner Review Board ("PRB") denied his latest parole request, Mosley filed suit against three individuals: Paul Klincar, Chairman of the PRB; Richard M. Daley, State's Attorney of Cook County; and John S. Arthur, an assistant state's attorney. Based on 42 U.S.C. § 1983, Mosley's pro se complaint raises four claims relating to the denial of his most recent parole request. Initially, Mosley contends that the PRB did not give him a sufficient reason for the denial of parole. In addition, Mosley alleges that the PRB denied him access to some of the evidence included in his parole file. He also asserts that the State's Attorney's office, in the course of opposing his parole request, filed objections that contain falsehoods and misrepresentations about him. Finally, Mosley argues that certain statutory provisions governing Illinois parole procedures violate the Ex Post Facto Clause of the U.S. Constitution. In response to Mosley's complaint, defendants move to dismiss all four of the prisoner's claims. This court will now consider defendants' challenges to each of Mosley's claims.

## I. Reason for Denial of Parole

Under Illinois law, a prisoner cannot receive parole if the PRB determines that the prisoner's "release at that time would deprecate the seriousness of his offense or promote disrespect for the law." Ill.Rev.Stat. ch. 38, para. 1003–3–5(c)(2) (1987). Nonetheless, unless the PRB uniformly denies parole to all prisoners convicted of murder, the PRB cannot justify its rejection of a convicted murderer's parole request by referring generally to the gravity of the prisoner's crime. In order to ensure that each prisoner receives due process, the PRB must offer specific reasons why it believes a particular prisoner's release would deprecate the seriousness of his offense. *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1191 (7th Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). Mosley complains that the PRB denied his latest parole request without following the procedures mandated by *Scott.* In a corrected rationale dated March 10, 1988, the PRB stated that it was denying Mosley's parole request due to the serious nature of his offense. According to Mosley, the March 10 rationale did not provide a sufficiently specific reason for the denial of his parole. Based on this claim, Mosley requests a new parole hearing. He also seeks $50,000 in compensatory damages from Klincar.

In his motion to dismiss, Klincar contends that Mosley cannot state a claim based on *Scott* because the March 10 rationale gave Mosley an adequate reason for the PRB's decision to deny him parole. To substantiate this assertion, Klincar points out that the March 10 rationale discussed the facts of Mosley's case. On this basis, Klincar compares the PRB's rationale with the explanations given for denying parole in *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir.1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976), and *Garcia v. United States Board of Parole,* 557 F.2d 100 (7th Cir.1977). Like the PRB in the instant case, parole officials in *Richerson* and *Garcia* considered the facts of a prisoner's case before determining that the prisoner's release would deprecate the seriousness of his offense. The Seventh Circuit concluded in *Richerson* and *Garcia* that parole officials had articulated sufficient reasons for denying parole to satisfy the requirements of due process. Klincar argues that the Seventh Circuit's rulings in *Richerson* and *Garcia* dictate dismissal of Mosley's claim. This argument ignores the significant distinctions between the Seventh Circuit precedents and the instant case. In *Richerson,* the Parole Board explained that it would not grant parole to a prisoner because he had wounded some police officers during the commission of his crime. *Richerson,* 525 F.2d at 801. Parole officials in *Garcia* rejected a prisoner's parole request because his bombing of several Chicago business establishments heightened the severity of his offense. *Garcia,* 557 F.2d at

103. In both *Richerson* and *Garcia*, parole officials justified their decisions by pointing to particular facts. By contrast, the PRB's March 10 rationale provided no specific factual basis for the denial of Mosley's parole request. According to the rationale, the PRB simply concluded that parole would deprecate the serious nature of Mosley's offense. Admittedly, when describing the background of Mosley's case, the rationale mentioned certain facts that might warrant the denial of parole (e.g., the wounding of a police officer). Nonetheless, unlike the explanations offered in *Richerson* and *Garcia*, the rationale in Mosley's case did not allude to any specific facts when discussing the decision to deny parole. The rationale merely asserted that the PRB had elected to deny Mosley parole after "considering the many facts involved in reaching a parole decision." To comply with the due process standards articulated by *Scott*, the PRB must tell Mosley which of the "many facts" in his case played a pivotal role in the decision to deny parole. Unless the PRB has supplemented its March 10 rationale by providing more specific reasons for its decision in Mosley's case, due process mandates that Mosley receive a rehearing. *See Scott*, 669 F.2d at 1191. Klincar has yet to present this court with a specific reason why the PRB refused Mosley's parole request. Consequently, the court declines to dismiss Mosley's claim that he should receive a new parole hearing.

Even if the PRB did not give Mosley adequate reasons for the denial of parole, however, Mosley cannot recover damages from Klincar. In seeking monetary compensation for a due process violation, Mosley is asking the court to hold Klincar liable for his official actions as Chairman of the PRB. When performing their official duties, members of the PRB possess absolute immunity from any suit for damages. *Walker v. Prisoner Review Board*, 769 F.2d 396, 398–99 (7th Cir.1985), *cert. denied*, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986). For this reason, the court dismisses Mosley's claim for damages stemming from the PRB's failure to give Mosley sufficient reasons for the denial of parole.

## II. Access to Parole File

Mosley also asserts that the PRB denied him access to certain documents contained in his parole file. Based on this claim, he seeks compensatory damages from Klincar. Unfortunately for Mosley, absolute immunity shields all PRB members from liability for damages resulting from the PRB's decision to restrict Mosley's access to his parole file. *See id.* at 399. Therefore, the court dismisses Mosley's claim for damages related to his inability to review his entire parole file.

Klincar's invocation of absolute immunity, however, does not dispose of all of Mosley's claims in connection with his limited access to his parole file. In addition to seeking damages, Mosley asks the court for permission to examine the documents that the PRB has withheld from him. Klincar has offered no reason why this court should dismiss Mosley's request to review any previously undisclosed documents. When a prisoner complains of limited access to his parole file, the absolute immunity afforded to parole officials does not preclude a court from awarding declaratory or injunctive relief in lieu of damages. For instance, in *Walker v. Prisoner Review Board*, 594 F.Supp. 556, 560 (N.D.Ill.1984), *aff'd*, 769 F.2d 396 (7th Cir.1985), *cert. denied*, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986), the district court acknowledged that a prisoner could not recover damages from the Chairman of the PRB, who is absolutely immune from suit. Nonetheless, the court concluded that the PRB had violated the prisoner's due process rights by denying him access to his parole file. For this reason, the court in *Walker* entered a declaratory judgment for the prisoner. *Id.* at 558. Similarly, despite its dismissal of Mosley's claim for damages, this court may find that Mosley is entitled to injunctive relief because the PRB refused to disclose certain documents to him. Mosley has a right to inspect all documents contained in his parole file. As the Seventh Circuit has noted, the PRB's own rules require disclosure to a parole candidate of all documents that the PRB considers in denying parole. *Walker v.*

*Prisoner Review Board,* 694 F.2d 499, 503 (7th Cir.1982), *cert. denied,* 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986). If Mosley can show that the PRB denied him access to any documents in his parole file, then he will have stated a legitimate claim for injunctive relief. In light of this possibility, the court refuses to dismiss Mosley's request to review any previously undisclosed documents.

### III. State's Attorney's Objections to Parole

■ Prior to a prisoner's parole hearing, Illinois law provides the prosecuting State's Attorney with an opportunity to submit relevant information about the prisoner to the PRB. Ill.Rev.Stat. ch. 38, para. 1003–3–4(e) (1987). In accordance with this statutory provision, Daley and Arthur filed objections to Mosley's parole request. Mosley claims that these objections contained falsehoods and misrepresentations about him. He asserts that the State's Attorney's office deprived him of due process by filing inaccurate and misleading objections with the PRB. Based on this claim, Mosley seeks compensatory damages from Daley and Arthur.

Even assuming that Mosley can prove his allegations concerning the State's Attorney's objections, Mosley cannot recover damages from either Daley or Arthur. An Illinois State's Attorney enjoys absolute immunity when performing a quasi-judicial function. *Henderson v. Lopez,* 790 F.2d 44, 46–47 (7th Cir.1986). To determine whether a particular task qualifies as a quasi-judicial function entitled to absolute immunity, a court must analyze three factors: (1) the historical basis for the immunity in question; (2) the risk that the official who performs the function will become entangled in vexatious litigation; and (3) the existence of checks upon abuses of authority by the official performing the function. *Id.* at 46 (citing *Mother Goose Nursery Schools, Inc. v. Sendak,* 770 F.2d 668, 671 (7th Cir.1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986)). An examination of these factors in the instant case indicates that Daley and Arthur performed a quasi-judicial function

when they filed objections with the PRB. First of all, the historical rationale underlying absolute immunity supports the prosecutors' claim of immunity from Mosley's lawsuit. The Seventh Circuit has held that the adjudication of parole requests by the PRB constitutes a quasi-judicial function. *Walker,* 769 F.2d at 398. Thus, by filing objections to Mosley's parole request, Daley and Arthur were simply assisting the PRB in the performance of a quasi-judicial task. Furthermore, if this court chose not to immunize Daley and Arthur from Mosley's suit, Illinois prosecutors would soon face a spate of spiteful lawsuits filed by unsuccessful parole candidates. Finally, even without resorting to a suit for damages under 42 U.S.C. § 1983, an Illinois prisoner receives adequate protection against the prospect that prosecutorial misrepresentations will lead to an unwarranted denial of parole. Illinois law guarantees each prisoner an opportunity to respond to any information submitted to the PRB. *Id.* at 401. If Illinois parole procedures fail to prevent an arbitrary denial of parole, a prisoner can rectify any injustice resulting from prosecutorial misconduct by petitioning for a writ of habeas corpus. *United States ex rel. Powell v. Irving,* 684 F.2d 494, 497 (7th Cir.1982). After considering all of these factors, this court concludes that Daley and Arthur acted with absolute immunity when they filed objections to Mosley's parole request. As a result, Mosley cannot maintain an action for damages against Daley or Arthur based on the alleged inaccuracies in the State's Attorney's objections.

■ As an alternative to damages, Mosley asks for a declaratory judgment that the State's Attorney's objections contain erroneous information. Mosley also requests the removal of these objections from his parole file. Faced with a similar request from another prisoner, the Seventh Circuit affirmed a district court's denial of declaratory relief. *Walker,* 769 F.2d at 399–402. In *Walker,* a prisoner complained about the inclusion of four purportedly prejudicial newspaper articles in his parole file. The district court refused to order removal of the articles from the file, and the Court of Appeals affirmed. According

to the Seventh Circuit, the prisoner could not establish a due process violation because Illinois parole procedures had adequately safeguarded his due process rights. *Id.* at 401. In the instant case, Mosley enjoyed the same procedural protections accorded to the prisoner in *Walker.* Before conducting Mosley's parole hearing, the PRB permitted the prisoner to review the objections filed by the State's Attorney. Mosley then received an opportunity to challenge the accuracy of any information submitted to the PRB by the State's Attorney. Having benefited from these procedural safeguards, Mosley cannot plausibly claim that he did not receive due process. Due to Mosley's inability to demonstrate a due process violation, this court dismisses Mosley's claim for declaratory relief pertaining to the State's Attorney's objections.

## IV. Illinois Parole Procedures and the Ex Post Facto Clause

■ In 1973, one year before Mosley committed the offenses that led to his imprisonment, the Illinois General Assembly amended the statutory provisions regulating the state's parole procedures. Specifically, the General Assembly rescinded the requirement that the PRB give notice of a prisoner's parole hearing to the victim of the prisoner's crime. *See* Ill.Ann.Stat. ch. 38, para. 1003-3-4 council commentary (Smith–Hurd 1982) ("[T]he Legislature has eliminated from former law notification of ... the complaining witness."). In 1985, however, the General Assembly reinstated the notification requirement. Under current law, whenever the PRB schedules a parole hearing for a prisoner, the PRB must give notice of the hearing to the victim of the prisoner's crime. Ill.Rev.Stat. ch. 38, paras. 1003-3-4(f), 1404(18) (1987). Mosley contends that the enforcement of this notification requirement in his case violates the constitutional prohibition against a state's enactment of any ex post facto law. *See* U.S. Const. art. I, § 10, cl. 1. Mosley persuasively argues that the change in Illinois parole procedures places him at a disadvantage. By enabling a prisoner's victim to participate in the prisoner's parole hearing, the notification requirement tends to reduce the prisoner's chances of receiving parole. Nonetheless, in order to establish a violation of the Ex Post Facto Clause, Mosley must show that the revision of Illinois law altered a substantial right: "Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto.*" *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *see also Weaver v. Graham,* 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17 (1981). Regardless of its potentially adverse impact on prisoners who seek parole, the notice requirement challenged by Mosley does not alter any substantive criminal law. Rather, the statutory provisions in question represent nothing more than a mere revision of Illinois parole procedures. In this respect, the requirement of victim notification resembles various procedural changes that have withstood ex post facto attacks in the Seventh Circuit. *See, e.g., Raimondo v. Belletire,* 789 F.2d 492 (7th Cir.1986) (amendment of procedures governing commitment of persons found not guilty by reason of insanity); *United States v. Molt,* 758 F.2d 1198 (7th Cir.1985) (change in the standard for bail pending appeal), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986); *United States ex rel. Massarella v. Elrod,* 682 F.2d 688, 689 (7th Cir.1982) (extension of the statute of limitations), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983). The Illinois legislature's decision to resurrect the requirement of victim notification altered parole procedures, not substantial rights. Consequently, Mosley cannot state a claim based on the Ex Post Facto Clause.

## CONCLUSION

To the extent that Mosley seeks a new parole hearing as well as access to all documents in his parole file, this court denies Klincar's motion to dismiss. In all other respects, however, the court grants defendants' motions to dismiss Mosley's claims.

IT IS SO ORDERED.